Gratton et al., Appellants, *v.* Conte et al.

Argued April 18, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*Alexander J. Bielski,* with him *Draga Musulin,* for appellants.

*James A. Wright,* with him *Michael Evashwick, Anne X. Alpern,* City Solicitor and *James H. Wallace, Jr.,* Assistant City Solicitor, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1950:

An attack is made in these proceedings on the validity of an ordinance changing the zoning classification of a tract of land in the 14th ward of the City of Pittsburgh.

The Act of June 10, 1911, P. L. 872, established in cities of the second class a Department of City Planning in charge of a City Planning Commission. The Act of March 31, 1927, P. L. 98, authorized the Council in second class cities to divide the city into districts and to regulate therein the construction and use of buildings, such regulations to be made in accordance with a comprehensive plan and designed to lessen congestion in the streets, promote health and the general welfare, provide adequate light and air, prevent the overcrowding of land and avoid undue concentration of population; such regulations were to be made with reasonable attention, among other things, to the topography and character of the district with its peculiar suitability for particular uses, and with a view to encouraging the most appropriate use of land throughout the city. It was made the duty of the City Planning Commission to recommend the boundaries of the various districts and appropriate regulations to be enforced therein, and the duty of the Council to provide for the manner in which such regulations, restrictions and boundaries of the districts should be determined, established and enforced, and, from time to time, amended, supplemented or changed; in case of a protest against any such change, or when disapproved by the City Planning Commission, such amendment was not to become effective except by the favorable vote of three-fourths of all the members of the Council of the city.

Pursuant to authority given by former acts the Council of the City of Pittsburgh enacted an ordinance, approved by the Mayor on August 9, 1923, which established certain use districts—industrial, commercial, retail and residence—and provided for the regulation therein of buildings and occupancies. The residence districts were sub-divided into "A", "A-B", "B" and "C"; in the "A-B" residence districts there were to be allowed, inter alia, one-family dwellings, two family dwellings

and multiple dwellings, in the "B" residence districts, inter alia, one-family dwellings and two-family dwellings but not multiple dwellings. The ordinance contained a section similar to the provision of the Act of 1927 that when a protest was made against a proposed change in the boundaries of the districts or the regulations, or when such change was disapproved by the City Planning Commission, the ordinance providing for such amendment, supplement or change should not become effective except by a favorable vote of three-fourths of the members of Council.

The tract with which the present case is concerned is land consisting of 7.647 acres lying between Beechwood Boulevard, near its intersection with Shady Avenue, and Saline Street. It, together with the entire surrounding area, was originally zoned as "B" residential. It had been laid out by one Miller, a former owner, as a lot plan for single and double-family dwellings but the lots could not be sold because the topography of the tract did not reasonably permit of the erection and use of such dwellings. Land adjoining it on Beechwood Boulevard and land across the Boulevard was largely built up and occupied by private homeowners, but the tract in question has a frontage of only about 260 feet on the Boulevard and, as it cannot be reached from any other street, building lots located on the inside of the tract would be cut off entirely from access to the system of city streets; to permit of its use for single or double-family dwellings it would be necessary to resort to an extensive project of leveling and grading, laying expensive sewer lines, and constructing and paving streets inside the tract so as to connect it with Beechwood Boulevard. As a result of these obstacles this 7 acre tract remained vacant and overgrown with weeds and bushes. Miller sold the tract to Ralph B. Hartman, one of the present defendants, who subsequently entered into a written agreement to sell it to John C. T. Conte,

another defendant, and at the latter's request and solicitation an amendatory ordinance was presented to Council to change the zoning of the tract to "A-B" residential and to raise the height limitation of the buildings from 35 to 45 feet, thereby permitting the construction of multiple dwellings. Notice having been given to the City Planning Commission, that body disapproved the proposed zoning reclassification, largely on the ground that it would tend to create "an undesirable island of multiple-family district zoning" in the midst of a single and double-family dwelling district, and would cause hazardous traffic conditions in the vicinity. The amendment was also opposed by neighboring property owners, including the present plaintiffs. Council, however, passed the amendatory ordinance by a vote of 7 to 1. The present bill in equity was thereupon filed to have it declared invalid and to obtain an injunction against the erection of multiple dwellings on the tract in question. After an extensive hearing the Chancellor, in a comprehensive opinion, rejected all the complaints made by plaintiffs and declared the ordinance to be a proper exercise of the police power of the Council under its legislative authority to establish and change zoning classifications. The court en banc having sustained the Chancellor, the present appeal followed.

Plaintiffs apparently labor under the misapprehension that the hearings and discussions before the City Planning Commission and the Council were pertinent in the determination of the question as to the validity of the amendatory ordinance, and that judicial inquiry should have been made as to whether the Council gave due and proper consideration to the report of the Commission; they urge the extraordinary proposition that the Council has the right to overrule the Commission only when it is established that that body did not act in good faith or was wholly arbitrary in its recommendations. This contention loses sight of the fact that the

Commission is, as far as zoning is concerned, merely a recommendatory body; final decision rests in the elective legislative body of the city government. In order that the Council should not lightly ignore the report of the Commission the Act of 1927 provided that in case of disapproval by that body of a proposed change in zoning regulations or boundaries a vote of three-fourths of all the members of the Council should be required to pass the ordinance; once such a vote is obtained, however, the requirements of the law are fulfilled. The ultimate power is vested in the Council, and its good faith in acting for the public welfare cannot be questioned by the judicial branch of government.

Considerable testimony was offered by plaintiffs in an attempt to establish that the amendatory zoning ordinance was not a part of, or in accord with, the comprehensive zoning plan of the city as originally adopted; that it would increase the congestion and dangers of traffic, the density and concentration of population and the overcrowding of the land; that there was no need to differentiate this tract in zoning classification from that of the neighboring areas and that the amendment amounted to spot zoning; since the major objects to be accomplished by zoning as outlined in the Act of 1927 were to prevent the overcrowding of the land and to avoid undue concentration of population plaintiffs contend that the amendatory ordinance brought about results contrary to the express purpose of the statute and is therefore invalid. The difficulty with that position is that defendants produced testimony to the contrary, and the chancellor found facts, affirmed by the court en banc, which do not support plaintiffs' contentions. The court found that the amendatory ordinance was within the scope of the comprehensive plan for the development of the City of Pittsburgh, and that, as the statute required, reasonable consideration was given to the topography and character of the district and its

peculiar suitability for particular uses. The court pointed out that topographically the 7 acre tract is entirely dissimilar from the surrounding areas because of its limited frontage on the Boulevard and its constituting a kind of plateau with steep declivities surrounding it on three sides. The court further found that the tract was unsuited for detached private dwellings except at a cost so excessive as to deter any purchaser thereof from bringing it into useful and desirable occupancy,—a conclusion supported by the fact that in all the years during which dwelling houses were built on the surrounding land this particular tract remained undeveloped; on the other hand, the court found that it was peculiarly suitable for the garden type multiple houses which defendant Conte proposed to erect thereon, and that, if such erection was forbidden, the owner would be arbitrarily denied the only possible beneficial use of his property; therefore, because of this difference of the 7 acre tract from the surrounding properties, Council could, with perfect propriety, zone it differently. While a piecemeal method of altering zoning classification is frequently undesirable practice it may be the only way of protecting rights which must be recognized, and, while all zoning regulations must be in accord with the general comprehensive plan, they should be made, as the statute provides, with a view to encouraging the most appropriate use of the land. Of course a zoning ordinance must not be arbitrary or unreasonably discriminatory, but zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no substantial relation to public health, safety, morals or general welfare: *Ward's Appeal*, 289 Pa. 458, 137 A. 630; *Kerr's Appeal*, 294 Pa. 246, 144 A. 81. Plaintiffs must also realize that the original zoning ordinance which established the comprehensive plan for the city gave

them no vested rights which would prevent the city from subsequently amending that ordinance; indeed the power so to amend was expressly conferred by the Act of 1927 and was also reserved in the ordinance itself; the general ordinance fixing the boundaries of the zones did not constitute a contract with plaintiffs preventing the city from subsequently changing those boundaries if it found it desirable so to do: *Hollearn v. Silverman,* 338 Pa. 346, 349, 350, 12 A. 2d 292, 293.

There was nothing wrong in the court's hearing testimony from Conte (even though not bearing directly upon the question of the validity of the amendatory ordinance) as to his contemplated building plans and his intention not to use his rights under the amendatory ordinance to their fullest extent but, on the contrary, to provide for a population of fewer families than the ordinance would have permitted. When he appeared before the Council at the time the amendatory ordinance was under discussion he gave certain assurances in regard to the locations and heights of the buildings which he proposed to erect, and he made similar commitments when on the witness-stand before the court below. The court, in order to enforce those commitments, embodied in its decree an injunction against the construction by Conte, his heirs or assigns, of any building closer to the Boulevard than 100 feet in one portion of the frontage and 150 feet in another portion or in excess of two floors in height within the 150 foot distance. Plaintiffs characterize this injunctive restriction as in the nature of a judicial amendment to the zoning ordinance itself, and they question the right of the court to impose it merely in order to make the construction of Conte's proposed buildings more acceptable to the neighboring property owners. We fail to understand how such a provision in the decree can be made the subject of a complaint by those whom its only purpose was to benefit.

Decree affirmed; costs to be divided equally between plaintiffs and defendants.