590 A.2d 744

**Thomas PATRICCA, Rosemary Freeman, and S.O.R.E., Appellants,**

**v.**

**The ZONING BOARD OF ADJUSTMENT OF the CITY OF PITTSBURGH, Appellee,**

**v.**

**BEECHWOOD TOWERS ASSOCIATES, Appellee.**

Supreme Court of Pennsylvania.

Argued March 7, 1991.

Decided May 9, 1991.

268

Gordon D. Fisher, Pittsburgh, for appellants.

Mary K. Conturo, City Sol., Gretchen G. Donaldson, Associate Sol., City Sol.'s Office, Pittsburgh, for appellees.

Mark L. Unatin, Ronald G. Backer, William P. Bresnahan, Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, for Beechwood Towers Associates.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Before us for review in this appeal is a Commonwealth Court order that affirmed an order of the Allegheny County Common Pleas Court which had sustained a decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board) denying a Protest appeal of the appellants, Thomas Patricca, Rosemary Freeman and S.O.R.E.[1] The Board, in denying the Protest appeal, upheld the action of the Pittsburgh Zoning Administrator which granted the application of appellee Beechwood Towers Associates (developer) for the erection of a nine (9) story multiple-family residence, and which granted an Administrator's exception for parking in an "S" zoned district. The proposed multiple-family residence that was approved by the Zoning Administrator and upheld by the Board contains one hundred (100) dwelling units and one hundred (100) outdoor parking spaces of which sixty-six spaces are on the subject property and thirty-four (34) spaces are on neighboring property, to be secured by a ninety-nine (99) year lease.

The subject property involved in this appeal is an irregular tract of land that is approximately 400 feet in length running generally in a northerly-southerly direction and located partially in an R5 district and partially in an S district. It abuts Saline Street on the west and is set back approximately 150 feet from Beechwood Boulevard on the east. The western boundary of the property which directly abuts Saline Street is on a line of approximately 350 feet. No portion of the subject zoning lot actually abuts on Beechwood Boulevard. Access to and from Beechwood Boulevard is provided by a 50–foot wide right-of-way over a neighboring tract of land which borders on Beechwood Boulevard. That 50–foot wide right-of-way runs in an

---

1. The record indicates that in paragraph 1 of the Petition for Appeal from the decision of the Board filed in the Court of Common Pleas of Allegheny County, S.O.R.E. is simply identified as "an unincorporated association of residents residing in the area immediately adjacent to the location of the subject property."

easterly direction approximately 150 feet from the westerly side of Beechwood Boulevard to the subject property. The subject property abuts the northern border of that right-of-way.

The Board determined that the subject property is bounded on the west by Saline Street and, by virtue of the right-of-way over adjoining land, is bounded on the east by Beechwood Boulevard. This determination was pivotal in that the location of the front yard, side yard and rear yard along with satisfaction of the ordinance's requirements pertaining to yards depend upon the location of the front of the property. Further, the Board approved, as an administrator's exception, the plans for eighteen parking spaces in the S district portion of the subject property. In addition, the subject zoning lot is not of sufficient size and/or suitable configuration to accommodate the nine-story multi-family building with 100 dwelling units and all of the required 100 parking stalls. To meet the parking space requirements of the zoning ordinance, the developer agreed to lease from a neighbor, under a 99 year lease, a portion of adjoining land which abuts the southerly side of the 50 foot-wider right-of-way. That leased land provides parking spaces for 34 vehicles. The Board upheld the approval of this parking plan as an authorized arrangement under the zoning ordinance. The appellants filed an appeal from the Board's decision to the Court of Common Pleas of Allegheny County. The Common Pleas Court did not take any additional evidence and, based upon its review of the record, that court dismissed the appeal. On further appeal, the Commonwealth Court, in a Memorandum opinion, affirmed. 127 Pa.Cmwlth. 673, 561 A.2d 1347. We granted the appellants' petition for allowance of appeal.

The questions raised by the appellants in this appeal are: (I). Whether a right-of-way easement over adjoining property is part of the subject zoning lot for purposes of determining if the subject property abuts Beechwood Boulevard? (II). Whether the areas required under the zoning ordinance for ingress and egress to and from a parking

area may be used to meet the side yard and front yard requirements of the zoning ordinance? (III). Whether, in an "R5" district, an off-site parking area located on another zoning lot can be leased as an accessory use under the zoning ordinance? (IV). Whether the parking stalls in the adjacent "S" district zoning lot qualify as a "community parking area" within the meaning of the zoning ordinance? (V). Whether the injunction against construction of any building closer to Beechwood Boulevard than 100 feet in one area and 150 feet in another area affirmed in *Gratton v. Conte*, 364 Pa. 578, 73 A.2d 381 (1950), prohibits the construction of a parking lot within the area covered by the injunction? [2]

■ Our scope of review in a zoning case where the trial court has not received any additional evidence is limited to determining whether the Board committed an error of law or a manifest abuse of discretion. *Pa. Northwestern Distributors, Inc. v. Zoning Hearing Board*, 526 Pa. 186, 584 A.2d 1372 (1991); *Appeal of Miller*, 511 Pa. 631, 515 A.2d 904 (1986). In the case before us, the Board found, inter alia, that the 50–foot wide right-of-way abutting on Beechwood Boulevard and extending across property adjacent to the subject property establishes the "front lot line" of the subject property. The Pittsburgh zoning ordinance provides that the "front lot line" is the "line which is along a front street." [3] Section 903.02(1). The zoning ordinance further provides: "Where a lot is bounded by more than one street, any one street may be selected as the front street." Section 903.02(1). The Board observed that the developer, Beechwood Towers, selected Beechwood Boule-

2. In addition to the questions presented by the appellants, the developer raised the issue and argued that the appellants' protest appeal filed with the Board was untimely. Article IV, Section 401 of the Rules of Procedure of the Zoning Board of Adjustment provides that a protest appeal must be filed within thirty days of receipt of notice of the Administrator's decision. A review of the record in this case reveals that the appellants received notice of the Administrator's approval on or about August 3, 1987 and filed the protest on August 5, 1987. This is clearly within thirty days as prescribed by the rules.

3. "Front Street" is not defined by the zoning ordinance.

vard as the front street, thus the "front lot line" of the subject property abuts Beechwood Boulevard. In determining, for purposes of approving the developer's proposed project, that the "front lot line" of the subject property is the line of the right-of-way which abuts Beechwood Boulevard, the Board also concluded that the right-of-way itself was the front yard of the subject property and that it was far in excess of the twenty-five feet in depth required by the zoning ordinance for the "front yard." Section 941.-04(3). Under the zoning ordinance, front yard "means a yard extending across the full width of the lot and abutting the front line, the required depth of which yard is prescribed minimum distance between the front lot line and a line parallel thereto on the lot." Section 903.02(y).

## I.

The appellants argue the right-of-way easement which provides access to the subject property from Beechwood Boulevard is not part of the subject property and cannot be used to establish the "front line" of the subject property. The appellants assert that the subject property actually and physically abuts on Saline Street along a line of 350 feet and that line is the "front line" of the subject property. The appellants further argue that if Saline Street is deemed the "front street" as the law dictates, the developer's building proposal fails to satisfy the minimum side yard set-back requirement (25 feet when abutting a street and 20 feet when not abutting a street, Section 941.04(5)(a)) and the minimum rear yard set-back requirement (25 feet abutting a street and 30 feet when not abutting a street, Section 941.04(4)) established by the zoning ordinance. Identifying Saline Street as the "front street", the side yard of the subject zoning lot abuts adjoining property not a street, and thus a 20–foot set-back is required. The appellants argue that because the side yard is substantially occupied by a parking area, and under the ordinance a parking area may not encroach upon a side yard, the side yard set-back requirement is not achieved.

The developer counters appellants' arguments by arguing first that the subject property abuts two streets, Saline Street on the west and Beechwood Boulevard on the east by way of the 50-foot wide right-of-way over adjoining property. The developer asserts that the subject property, without itself touching Beechwood Boulevard, abuts Beechwood Boulevard via the 50-foot right-of-way by citing the ordinance's definition of the term "lot." The zoning ordinance defines "lot" simply as "[a] parcel of land." Section 903.-02(1). The developer contends that "a parcel of land" commonly includes all of the rights and appurtenances to the land, including easements and rights-of-way. (Developer's brief, p. 7–8). Further, developer cites Black's Law Dictionary which states that: " 'Land' may include any estate or interest in lands, either legal or equitable, easements, incorporeal hereditaments." (Developer's brief, p. 8). Added to these definitions, the developer, without explaining why, asserts that the 50-foot wide right-of-way is the only access to the subject property and the proposed development. (This assertion is hard to understand in that there is no question that the subject property abuts Saline Street.) The developer concludes that in view of the physical facts of the subject property and the definitions referred to above, the Board's determination that the subject property abuts Beechwood Boulevard on the east by way of the 50-foot wide right-of-way which was affirmed by the Commonwealth Court, should likewise be affirmed by this court. We disagree.

We have stated that The Statutory Construction Act, 1 Pa.C.S.A. §§ 1501–1991, applies specifically to state statutes and is not expressly applicable to local ordinances. *Council of Middletown Township v. Benham*, 514 Pa. 176, 523 A.2d 311 (1987). Nevertheless, the principles contained in that Act are to be followed in construing a local ordinance. *Id.; Francis v. Corleto*, 418 Pa. 417, 211 A.2d 503 (1965). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . . ." 1 Pa.C.S.A. § 1903(a); "When the

words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Applying these principles of interpretation to the Pittsburgh zoning ordinance, it is clear that the subject property does not abut Beechwood Boulevard, therefore, the developer's selection of Beechwood Boulevard as the "front street" and the Board's approval of that selection is contrary to law. The zoning ordinance provides: "Where a lot is *bounded* by more than one street, any one street may be selected as the front street." Section 903.02(1). (Emphasis added) "Bound" is defined by the Random House Dictionary of the English Language, 2nd Edition, unabridged (1987) as: "land within boundary lines"; "something that limits, confines or restrains"; additionally, border is given as a synonym for "bound." Webster's Ninth New Collegiate Dictionary (1986) defines "bound" as: "a limiting line"; "the land within certain bounds." Based upon these dictionary definitions, the common and approved usage of the word "bounded" is a limiting line within which the property lies. Obviously, since the subject property abuts Saline Street, it is "bounded" by that street. Conversely, inasmuch as no part of the subject property abuts Beechwood Boulevard; that Beechwood Boulevard is not a limiting line within which the subject property lies; the subject property is not "bounded" by Beechwood Boulevard.

■ The 50–foot wide access area is referred to as both a "right-of-way" and as an "easement" in the appellants' brief and in the developer's brief. These designations appear to be used interchangeably by the parties. Generally, the grant of an easement or a right-of-way conveys the right of passage or use over a particular portion of land. The owner of the land over which the easement or right-of-way is granted reserves all incidents of ownership which are not conveyed. "An easement is a liberty, privilege, or advantage which one may have in the lands of another without profit.... [It] may be created by a covenant or agreement.... But it cannot be an estate or interest in the

land itself, or a right to any part of it." *Clements v. Sannuti,* 356 Pa. 63, 51 A.2d 697 (1947).[4] The right-of-way in this case gave the developers nothing more than an easement for use and access. Since the developers have no interest in the land over which the 50–foot wide right-of-way runs other than the right to use the surface for ingress and egress, that right-of-way is not part of the subject property for purposes of determining the "front line." The easement of use over neighboring land may be an incident of ownership of the subject property which may be conveyed as the developer contends, but that right of use is not sufficient to support the conclusion that the subject property is "bounded" by Beechwood Boulevard. The easterly limits of the subject property are "bounded" by private adjoining property, which property abuts Beechwood Boulevard. The subject property itself does not physically, actually or legally abut on Beechwood Boulevard. Accordingly, we find that the Board committed an error of law in concluding that the subject property abuts on or is "bounded" by Beechwood Boulevard and in approving the developer's selection of Beechwood Boulevard as the front street.

## II.

■ Next, the appellants argue that the development plan of the developer fails to satisfy the side yard requirements of the zoning ordinance with respect to the area proposed as a side yard on the easterly border of the subject property. According to the site plan, the side yard on the easterly edge of the subject property is an area forty-one feet in depth. The first two feet from the property line is vacant land. The next twenty feet is the driveway

4. Although a "right-of-way" is generally an easement of use over another's land, it can consist of fee where it is clear from the agreement between the parties that a fee was intended. *Graybill v. Hassel,* 167 Pa.Super. 284, 74 A.2d 686 (1950). There is no claim by the developer in this case that the 50–foot right-of-way from Beechwood Boulevard to the subject property was anything more than an easement of passage and use. The developer's brief identifies the right-of-way as an easement providing access to the subject property. (Developer's brief, pps. 8 & 9).

onto the subject property. The remaining nineteen feet contains twenty-three parking stalls, each stall being 8 feet 6 inches wide. The Board found that the twenty-foot driveway qualified as a side yard and this finding was affirmed by the Commonwealth Court. The appellants argue: (1) that the area on the easterly edge of the subject property designated as a side yard is only designated as such because the developer was permitted to unlawfully select Beechwood Boulevard as the "front street"; that the area on the easterly border is not a side yard if the front lot line is properly recognized as Saline Street; and (2) even if the front lot line was properly on Beechwood Boulevard, the developer's plan nonetheless violates the zoning ordinance because the twenty-foot driveway is actually part of the parking area and under the ordinance a parking area may not encroach upon a side yard. Since we have concluded that the Board erred in holding that the front lot line of the subject property abuts on Beechwood Boulevard, the appellants' contention that the area on the easterly edge of the subject property is *not* a side yard is verified by the site plan. Furthermore, even if we assume that the front lot line of the subject property actually abuts Beechwood Boulevard, the easterly edge would not qualify as a side yard under the zoning ordinance because that entire space is established as a parking area. The developer argues that of the forty-one feet which is the depth of the easterly edge of the subject property, only nineteen feet of that depth will be used for parking stalls. The developer contends that the remaining twenty-two feet (two feet of vacant land and twenty feet of driveway) comprises the side yard. The developer's position is that the parking area is comprised of only the parking stalls. We disagree. Section 989.01 of the zoning ordinance states:

There shall be provided ... minimum off-street parking space including required number of parking stalls plus not less than twenty-five percent (25%) in total area for adequate provision of ingress, egress and general circulation....

Thus, under the zoning ordinance, parking stalls are not in and of themselves the required parking area. According to Section 989.01, parking stalls are part of the total area required for a parking area. The driveway, which is for ingress, egress and general circulation, is also part of the parking area. Accordingly, at least thirty-nine feet of the forty-one feet of the depth of the easterly side of the subject property is parking area. The zoning ordinance (Section 989.03) provides that in an R–5 district a minor parking area, (defined as a parking area which is an accessory use, Section 903.02(p)), "may be located within the buildable areas of the lot ..." Section 993.03(a)(1) provides for an exception to the location of a minor parking area by permitting the Administrator to authorize a minor parking area to be located within a rear yard. There is no provision of the zoning ordinance which permits the Administrator to authorize a parking area within a side yard. Thus, even if the subject property abutted Beechwood Boulevard on the east, the side yard requirements of the zoning ordinance would not be met.

### III.

The appellants next argue that the thirty-four parking spaces to be leased on adjacent property are not permitted as a use in an R–5 District. Appellants support their argument on this point by citing Sections 989.02, 989.03 & 903.02 of the zoning ordinance. A review of the sections referred to by the appellants reveals the following: Section 989.02 provides that automobile parking in an R–5 district may be provided in a minor garage or minor parking area. Section 989.03(a)(2) provides that, "A minor parking area may be located within the buildable area of the lot." Section 903.02(p) defines a minor parking area as follows: "[A] parking area which is an accessory use." Section 903.02(u) defines an accessory use as: "[A] subordinate use which is clearly incidental and related to that of and on the same zoning lot or accredited zoning lot with a main structure or main use of the land." Thus, according to the relevant provisions of the zoning ordinance, the only permis-

sible parking area in an R–5 district is a minor parking area which is on the same zoning lot with the main structure or main use of the land. The thirty-four leased parking spaces which are part of the proposal in this case are not on the same zoning lot with the main structure and therefore, in accordance with the above provisions of the zoning ordinance, we find they do not constitute a permissible use as a minor parking area.

■ Additionally, appellants assert that the leased parking spaces cannot properly be approved as an administrative exception because the zoning ordinance requires that for the Administrator to authorize an exception for a parking area such as the leased parking spaces in this case: "A properly drawn legal instrument shall be executed by the parties concerned for the use of such ... parking area to provide required parking space, which instrument, duly approved by the City Solicitor, is filed with the application for occupancy permit." Section 993.04(a)(D). The appellants contend that no such properly drawn legal instrument was approved by the City Solicitor and filed with the application for an occupancy permit as required by the ordinance. (Appellants brief, p. 16). The developer responds by citing Section 989.02 of the zoning ordinance which provides:

Automobile parking space as required in Section 989.01 may be provided according to district and facility as follows: (a) In S other than S–A and R other [than] RP Districts: in a minor garage or minor parking area, or when the parking spaces required herein cannot be accommodated on the same zoning lot with the main structure, may when authorized by the Administrator (See Section 993.04(a)(1)) be provided in a community garage or community parking area or major garage or major parking area located as otherwise prescribed in this chapter and not more than 1,000 feet from the use it is proposed to serve.

Section 989.01 requires, in this case, that there be one parking space for each dwelling unit. Since there are 100

dwelling units in the proposed nine-story building, 100 parking spaces are required. The subject zoning lot cannot accommodate all 100 spaces therefore, under Section 989.02 cited above, the Administrator may authorize off-site parking in a community garage or community parking area or a major garage or major parking area located not more than 1000 feet from the subject property. Additionally, the zoning ordinance requires a properly drawn legal instrument for the use of the parking area which is executed by the parties, approved by the City Solicitor and filed with the application for an occupancy permit. Section 993.02(1). The record indicates that a memorandum of understanding between the owner of the adjacent property and the developer, dated August 20, 1984, attached to the developer's brief as Exhibit B and offered as the "properly drawn legal instrument," calls for lease of sufficient space for thirty-two parking spaces. The memorandum of understanding further provides that the location of the spaces shall be "as set forth in the preliminary drawings prepared by David Hamburg dated August 5, 1984." (See Exhibit "B" to Developer's brief). The preliminary drawing prepared by David Hamburg referred to in the memorandum of understanding is not attached. The Site Plan dated July 21, 1987, prepared by Green, Frantz & Associates which is attached as Exhibit A to developer's brief, sets forth a total of thirty-four leased parking spaces. The Memorandum of Understanding which provides for the leasing of 32 parking spaces would leave the project short two parking spaces. Additionally, there is no evidence that the Memorandum of Understanding was approved by the City Solicitor as required by the zoning ordinance.[5] We, therefore, find that

5. The developer argues that the issue that the Memorandum of Understanding was never approved by the City Solicitor was not raised by the appellants at the zoning hearing before the Board, therefore it may not be raised for the first time before this Court. A review of the record indicates that in the appeal from the Decision of the Zoning Administrator to the Board, one of the reasons averred by the appellant for the appeal was that there were errors and omissions in the application of the developer. In the Petition for Appeal to the Common Pleas Court, the Board's written decision was attached as an

the leased parking spaces on neighboring property are not a permitted use in an R–5 district and, under the circumstances of this case, are not properly authorized as an administrative exception.

## IV.

■ Next, the appellants argue that the parking spaces provided by the developer in an adjacent S zoning district are not permitted by the zoning ordinance. Under the zoning ordinance there are three types of parking areas: community parking area, major parking area and minor parking area. The zoning ordinance provides for automobile parking space, in part pertinent hereto, as follows:

> In S other than S–A ... when the parking spaces required ... cannot be accommodated on the same zoning lot with the main structure, may when authorized by the Administrator ... be provided in a community garage or community parking area or major garage or major parking area located as otherwise prescribed in this chapter and not more than 1,000 feet from the use it is proposed to serve....

Section 989.02. In this case, the Board approved the proposed parking area in an adjacent S district as a community parking area authorized as a use exception by the Administrator (Section 989.03(b)(3)), and the Commonwealth Court affirmed that approval. Community parking area is defined by the ordinance as:

> [A] parking area used exclusively by *the* residents of the neighborhood or customers or persons engaged in the conduct of establishments in the immediate vicinity of its location, or by those for whom such establishments are conducted. (emphasis supplied)

exhibit and in that written decision it was noted that part of the reasons for the appellants' appeal was errors and omissions in the application. The failure to file a Memorandum of Agreement approved by the City Solicitor is an error and/or omission in the application.

Section 903.02(p). The zoning ordinance provides for a use exception for a community parking area in an S district as follows:

When in an S District, used exclusively for the parking of non-commercial automobiles to supply parking needs for uses permitted in an S District or for residents of the [sic] the residents of the neighborhood.

Section 989.03(b)(3)(A)(1). Appellants contend that the Administrator's exception granted in this case for parking in an S district upon the basis that the area is for the parking of non-commercial automobiles of *the* residents of the neighborhood is improper in that the parking area proposed by the developer in an S district is for the benefit of a very limited group of people. We agree.

When the zoning ordinance speaks of the parking needs of *the* residents of the neighborhood, as it does in Section 989.03(b)(3)(A)(1) (and in Section 903.02(p)), it is speaking in definite terms. In other words, the references in the ordinance to *"the* residents of the neighborhood" are definite references to all persons who reside in the neighborhood. The word "the" is a definite article and is "used ... before a noun, with specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article 'a' or 'an' '", Random House Dictionary of the English Language, 2nd Edition, Unabridged (1987). Use of the parking area in the developer's plan in this case is limited to a "private" group of residents of a particular building proposed for the neighborhood. Admittedly, the residents of the proposed apartment building would be residents of the neighborhood. However, they would not be all of the residents of the neighborhood; they would not be *the* residents of the neighborhood as described in the zoning ordinance. Simply stated, the parking area proposed by the developer in the adjacent S district zoning lot will not be available for use by *the* residents of the neighborhood nor would it be used exclusively by *the* residents of the neighborhood. Rather, it is proposed for use by a select group of residents of the neighborhood to the exclusion of all of the

others who comprise *the* residents of the neighborhood. For instance, if a tenant of the proposed building who had use of the proposed parking area moved to another residence in the neighborhood, that tenant would lose his or her right to park in the parking area even though he or she is still one of *the* residents of the neighborhood. The Board, therefore, erred in granting approval of the parking area in an S district as a Community Parking Area under an Administrator's exception.

## V.

■ Finally, the appellants argue that the injunction issued in the case of *Gratton v. Conte,* 364 Pa. 578, 73 A.2d 381 (1950) bars the construction of a parking lot within the area covered by the injunction. In *Conte,* a challenge was made to the validity of a city ordinance which changed the zoning classification of a tract of land in the 14th ward of Pittsburgh lying between Beechwood Boulevard and Saline Street. Part of the trial court order therein, which was affirmed by this Court in *Conte,* included an injunction against the construction of any building closer to Beechwood Boulevard than 100 feet in one area and 150 in another area, or in excess of two floors in height within the 150 foot distance. 73 A.2d at 385. The proposed parking area to be leased on neighboring land would be constructed within the area covered by the injunction affirmed in *Conte.* The appellants argue that the parking area, although not a building, is a structure that is prohibited under the terms of the injunction. We disagree. In *Conte,* it was specifically stated that the injunction prohibited "construction ... of any *building*" in the covered area. 73 A.2d at 385. The Zoning ordinance defines building as "[A] structure having a roof supported by columns or walls, for the housing or enclosure of persons, animals or chattels." Section 903.-02(b). The proposed parking lot in this case does not come within the definition of a building. Additionally, in affirming the injunction in *Conte,* we noted that the restrictions were embodied in the lower court's decree to enforce com-

mitments given by the owner, both prior to trial and from the witness stand in court, with respect to the locations and heights of *the buildings* which he proposed to erect on the property. The parking area proposed on land covered by the injunction in *Conte* is not a building and does not violate that injunction.

The order of the Commonwealth Court is reversed.

ZAPPALA, J., did not participate in the consideration or decision of this case.

NIX, C.J., concurs in the result.

PAPADAKOS and CAPPY, JJ., note a dissent and would affirm on the basis of the Commonwealth Court opinion.