# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Artisan Construction Group, LLC | : | |
| | : | No. 470 C.D. 2021 |
| v. | : | |
| | : | Submitted: October 8, 2024 |
| Zoning Hearing Board of Upper | : | |
| Pottsgrove Township, Montgomery | : | |
| County, Pennsylvania | : | |
| | : | |
| Appeal of: Upper Pottsgrove Township | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                                    **FILED:  November 15, 2024**

Upper Pottsgrove Township (the Township) appeals from the order entered by the Court of Common Pleas of Montgomery County (trial court) on March 16, 2021, which reversed a decision of the Township's Zoning Hearing Board (Board) that was adverse to Artisan Construction Group, LLC (Artisan).  This case returns to us after we had remanded for the trial court to prepare a Pa.R.A.P. 1925(a) opinion.  We reverse in part, vacate in part, and remand as set forth below.

## I. BACKGROUND[1]

Artisan owns property consisting of two noncontiguous tracts of land connected by a road.[2]  Artisan successfully commenced the initial phase of its two-phase housing development plan.  In 2020, Artisan turned to the second phase of its

---

[1] We take the background from our prior decision addressing this matter.  *Artisan Constr. Grp., LLC v. Zoning Hearing Bd. of Upper Pottsgrove Twp.*, 275 A.3d 80, 82 (Pa. Cmwlth. 2022) (*Artisan I*).  Unless otherwise stated, we refer to our *Artisan I* decision.

[2] The parties dispute whether the two tracts are "connected" or "bisected" by the road.

plan, which it labeled Phase 2A and 2B. Very simply, Phase 2A was located on one noncontiguous tract and Phase 2B was located on the other noncontiguous tract.

Artisan requested that the Township's zoning officer review Phase 2A and 2B for compliance with a particular zoning overlay district.[3] This overlay district essentially provided for senior citizen housing. Because senior citizens have unique lifestyle and housing needs, one of the requirements was that any property developed within the overlay district must be located within 500 feet of Route 100, a state highway.

In early April 2020, the zoning officer determined that neither Phase 2A nor 2B complied with the overlay district. In relevant part, Phase 2B "is currently divided from [Phase 2A] by a lot line and is approximately 300 ft down Chestnut Grove Rd from the tract for Phase [2A]. Since [the Phase 2B] tract is separated by a lot line the tract is not eligible for the [overlay district]. . . . This tract is not contiguous with [Phase 2A,] which per the definition of Land Development would require a separate Land Development application be submitted to the Township." Zoning Hr'g Officer Ltr., 4/10/20, at 2 (unpaginated). In sum, the officer concluded, because Phase 2B was more than 500 feet away from Route 100, it did not qualify for the overlay district. *Id.*

Artisan did not appeal the zoning officer's April decision. Instead, later that month, Artisan submitted a revised plan. In May, the zoning officer determined

---

[3] "An overlay district creates a framework for conservation or development allowing for a new type of development or imposing restrictions that is superimposed over the zoning districts on all or part of a municipality. The purpose of an overlay district is to create specific and targeted provisions that conserve natural resources or realize development objectives without unduly disturbing the expectations created by the existing zoning ordinance. In other words, overlay districts supplement existing zoning districts, [but] they do not supersede them either in fact or in practice." *Protect PT v. Penn Twp. Zoning Hearing Bd.*, 220 A.3d 1174, 1187 (Pa. Cmwlth. 2019) (cleaned up).

that only the revised Phase 2A complied with the overlay district. In addition to reiterating the reasoning in the earlier decision, the zoning officer added that "the road does not bisect these two tracts of land, but rather is shown to connect the two tracts of land which are approximately 300 ft apart." Zoning Hr'g Officer Ltr., 5/13/20, at 2. Artisan appealed this decision to the Board and alternatively requested a use variance.

We need not recap the hearing before the Board other than to note that Artisan's witness agreed with the following definition of "bisect": "the term bisects means that you are splitting a parcel or a whatever in to [(sic)] two pieces." Notes of Testimony (N.T.) Hr'g, 8/13/20, at 63-64 (reflecting the witness's agreement to the Board's question regarding the term).

The Board issued two rulings. First, the Board affirmed the zoning officer's decision, reasoning that the Phase 2B tract was more than 500 feet away from Route 100. Thus, the tract did not comply with the overlay district requirements. Specifically, the Board explained that the Phase 2B tract was not contiguous to the other Phase 2A tract. Board's Decision, 9/21/20, at 6 ("Both in its technical dictionary definition, and in its common usage, the term bisect means to divide in some manner. It's clear to the Board that the intent of the Zoning Ordinance was to use the term 'bisect' in its common usage, and the Board does not believe that a road which connects Phase [2A] and Phase [2B] can be seen to bisect the Phases"), 10 (holding that the Phase 2B tract was not contiguous and 300 feet away from the other tract so the road did not "bisect" the two tracts). Second, the Board denied Artisan's alternative request for a use variance, reasoning that Artisan failed its burden of establishing, *inter alia*, unnecessary hardship. *See id.* at 7.

Artisan appealed the Board's decision to the trial court, which took no

additional testimony or evidence. The trial court summarily reversed the Board without explanation. Because Artisan prevailed, the Township appealed the trial court's decision to this Court. In relevant part, the Township challenged whether the Board had jurisdiction because Artisan did not appeal the zoning officer's April 2020 decision and whether the Board correctly ruled against Artisan on the merits.

The trial court issued a Pa.R.A.P. 1925(a) decision, reasoning that the Township waived all issues for failure to timely serve a Pa.R.A.P. 1925(b) statement. The trial court's Rule 1925(a) decision did not address jurisdiction or the merits.

The *Artisan I* Court resolved the service issue in the Township's favor and remanded to have the trial court draft a responsive Rule 1925(a) opinion on the merits. The Court explained that it required a responsive decision because the trial court reversed the Board's decision in Artisan's favor without addressing either of the Board's alternative rulings. The *Artisan I* Court noted that without the trial court's reasoning on which of the Board's rulings it disagreed with, we could not conduct a meaningful review. We therefore remanded to have the court prepare a responsive decision within 30 days.

Two years later, the trial court filed its Rule 1925(a) merits decision. Trial Ct. Op., 3/15/24.[4] The court did not define the term "bisect." *Id.* at 8. Rather, the court reasoned that it had to define the term "tract." *Id.* at 5. Per the court, if Phases 2A and 2B consisted of one overall tract of two noncontiguous parcels of land, then it would not have to resolve whether the road "bisected" the tract. *Id.* at 7. The court held that Phase 2B was part of the overall tract and thus complied with the overlay district. *Id.* The court explicitly declined to define "bisect" because, in its view, the zoning ordinance did not require tracts of land to be contiguous or

---

[4] The trial court explained it was unaware of this Court's order until the parties notified the court "in late 2023." Trial Ct. Op. at 3 n.2.

adjacent to each other. *Id.* at 7-8. The court also summarily reasoned, without explanation, that it "need not address [Artisan's] variance claims," *id.* at 8 n.3, and the court did not address the jurisdictional issue.

## II. ISSUES

The Township raises three issues. First, whether Artisan's failure to appeal the zoning officer's April 2020 decision deprived the Board of jurisdiction. Township's Br. at 5. Second, whether the Board correctly decided that the Phase 2B tract did not comply with the overlay district requirements. *Id.* Third, whether the Board properly denied Artisan's request for a use variance. *Id.*

## III. DISCUSSION[5]

### A. The Board's Jurisdiction

For context, we briefly elaborate on the exchange between Artisan and the zoning officer. After receiving the zoning officer's letter in early April 2020, Artisan replied by "writing to request a new opinion regarding revisions and changes which were made to the" plan. Artisan's Ltr. to Twp., 4/24/20, at 1. For Phase 2A, Artisan explained that it "removed the interior lot line which [the zoning officer] indicated created a 'separate tract of land' to be developed." *Id.* For Phase 2B, Artisan similarly stated that it "eliminated any lot line for" Phase 2B. *Id.*

The zoning officer agreed in part with Artisan's revision, reasoning that because Phase 2A's "interior lot line has been removed," it qualified for the overlay district. Zoning Hr'g Officer Ltr., 5/13/20, at 2. With respect to Phase 2B, the zoning officer disagreed, noting that it was located "approximately 300 ft down" the road

---

[5] "Since no further testimony was taken by the court below and the case was heard solely on the record before the Board, it was the lower court's duty (as it is ours on appeal) only to determine if the Board committed a manifest abuse of discretion or an error of law." *In re Miller*, 179 A.2d 194, 195 (Pa. 1962) (reversing the lower court's order and reinstating the zoning board's decision). "We may find an abuse of discretion only when the zoning board's findings are not supported by substantial, competent evidence." *Artisan I*, 275 A.3d at 84 n.5 (cleaned up).

5

from the Phase 2A tract. *Id.* Since the Phase 2B "tract is separated by a lot line, the tract is not eligible for the" overlay district. *Id.* Further, the "road does not bisect these two tracts of land, but rather is shown to connect the two tracts of land which are approximately 300 ft apart." *Id.* We turn to the parties' arguments.

In support of its first issue, the Township contends that under the Pennsylvania Municipalities Planning Code (MPC),[6] Artisan was required to timely appeal from the zoning officer's April 2020 decision that denied Artisan's Phase 2A and 2B plan. Township's Br. at 33-34. Artisan's failure, the Township argues, means that the zoning officer's decision was binding. *Id.* at 34. The Township emphasizes that instead of appealing, Artisan opted to submit a revised plan but *only* changed Phase 2A. *Id.* at 35. The Township thus reasons that because Artisan's Phase 2B plan was untouched, Artisan should have appealed from the zoning officer's April 2020 decision. *Id.* at 36-37. Because Artisan did not, the Township asserts that the Board lacked jurisdiction. *Id.* at 37 (citing Sections 909.1 and 914.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §§ 10909.1, 10914.1).

Artisan retorts that the Board had jurisdiction under 53 P.S. §§ 10909.1 and 10914.1. Artisan's Br. at 23. Artisan criticizes the Township for not citing any "statute or case law authority" in support of the Township's proposition that an applicant cannot "submit a new and revised submission" in response to an adverse zoning officer decision. *Id.* at 23-24. Artisan emphasizes that the zoning officer issued a different decision, *i.e.*, Phase 2A could move forward. *Id.* at 24. Further, Artisan disagrees with the Township's suggestion that the Phase 2B plan was unrevised. *Id.* Artisan stresses that it "eliminated any lot line" for Phase 2B, which was "substantive in nature." *Id.*

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

6

The MPC provides that the Board must hear "[a]ppeals from the determination of the zoning officer, including, but not limited to" various examples. 53 P.S. § 10909.1(a)(3). Under 53 P.S. § 10914.1(b), all such "appeals from determinations adverse to the landowners shall be filed by the landowner within 30 days after notice of the determination is issued." *Id.* § 10914.1(b).

Nevertheless, we have stated that "in the land development context, a municipality has a legal obligation to proceed in good faith in reviewing and processing development plans." *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587, 593 (Pa. Cmwlth. 2008) (*Nextel*) (citation omitted). This duty of good faith, the *Nextel* Court held, "includes discussing matters involving technical requirements or ordinance interpretation with the applicant, and providing an applicant *a reasonable opportunity to respond to objections or to modify plans* where there has been a misunderstanding or difference of opinion." *Id.* (emphasis added and citation omitted).

This Court resolved a similar issue addressing whether a property owner was required to appeal from a zoning officer's prior determinations. *E&R Partners, LP v. Robinson Twp. Zoning Hearing Bd.*, 311 A.3d 1191 (Pa. Cmwlth. 2024) (*Robinson*). In *Robinson*, the board argued that it lacked jurisdiction to consider the owner's appeal because it had failed to timely appeal from three prior zoning officer determinations. *Id.* at 1196. The board contended that under the plain language of 53 P.S. § 10914.1(b), the owner was required to appeal. *Id.* at 1197, 1199-1200. The *Robinson* Court rejected the board's argument, reasoning that "the purpose of the MPC's mandatory time limits is to protect an applicant from dilatory conduct by the municipality." *Id.* at 1200 (cleaned up). This Court thus reasoned it would be improper to require the owner to appeal the determinations. *Id.* (rejecting

the board's argument that, *inter alia*, allowing the owner to appeal whenever it wanted was contrary to the MPC).[7]

Instantly, on one hand, the MPC requires property owners to appeal from adverse decisions by the zoning officer within 30 days. *See* 53 P.S. §§ 10909.1(a)(3), 10914.1(b). On the other hand, requiring a property owner to appeal *every* determination without permitting the property owner a "reasonable opportunity to" amend its application seems onerous. *Cf. Nextel*, 958 A.2d at 593; *Robinson*, 311 A.3d at 1200. In light of *Nextel*, the more reasonable interpretation would be that if a property owner decides to appeal an adverse zoning officer determination, then the appeal must occur within 30 days or not at all. *See* 53 P.S. §§ 10909.1(a)(3), 10914.1(b). Such an interpretation would not run afoul of the plain statutory language and acknowledges the realities of land development practices. Plainly, the term "shall" applies to the 30-day deadline and does not otherwise require the landowner to appeal *every* adverse determination. *Cf. Robinson*, 311 A.3d at 1200.

In other words, if Artisan wanted to appeal the zoning officer's early April 2020 adverse determination, then it had to do so within 30 days. Artisan, however, elected to amend its application, *cf. Nextel*, 958 A.2d at 593, and the zoning officer issued a mixed decision in mid-May. Thus, Artisan had to appeal that partially adverse determination within 30 days to the Board or not at all. *See* 53 P.S. §§ 10909.1(a)(3), 10914.1(b).

The Township, however, posits that Artisan's two applications were materially identical as to Phase 2B. *See* Township's Br. at 36-37. Because they were

---

[7] To be clear, we recognize that the *Robinson* determinations were flawed because they did not comply with other provisions of the MPC. *Robinson*, 311 A.3d at 1198. The *Robinson* board, however, maintained that regardless of any flaws, the owner was required to appeal the adverse determinations to the board. *Id.* at 1199.

the same, the Township reasons that Artisan had to timely appeal the zoning officer's earlier April 2020 adverse decision on Phase 2B. *Id.* We respectfully disagree because the zoning officer found Artisan's revision, *i.e.*, its omission of the lot lines for Phases 2A and 2B, material. Indeed, the zoning officer approved Phase 2A *because* Artisan omitted the lot line. Zoning Hearing Officer Ltr., 5/13/20, at 2. The same omission as to Phase 2B, however, was insufficient. *See id.* Thus, we respectfully disagree with the Township's assertion that Artisan's two applications were identical. For all these reasons, we hold the Board properly exercised its jurisdiction to consider Artisan's appeal from the zoning officer's May 13, 2020 determination.[8]

## B. The Bisecting or Connecting Road[9]

We briefly state the relevant provision of the ordinance, which provides that a tract must meet certain requirements for the overlay district. Upper Pottsgrove Twp., Zoning Ordinance § 350-187(D) (2007). First, the tract must be located within 500 feet of Route 100. *Id.* Second, if the tract is bisected by a road, then the entire

---

[8] There are many reasons why an owner may wish not to appeal an adverse determination. Under the Township's interpretation, apparently all owners must appeal any adverse determination. We suggest that a reasonable interpretation of the plain language of 53 P.S. § 10914.1(b) is that *if* the owner decides to appeal, *then* the owner has 30 days. Although not binding, we note that the Township did not object to the Board's jurisdiction at the hearing. *See generally* N.T. Hr'g.

[9] The interpretation of a zoning ordinance is a question of law that we review *de novo*. *Merry v. Zoning Bd. of Adjustment*, 178 A.2d 595, 597 (Pa. 1962). "[W]hen construing the terms of a local zoning ordinance, we are guided by the principles of statutory construction . . . ." *Borough of Fleetwood v. Zoning Hearing Bd. of Borough of Fleetwood*, 649 A.2d 651, 656 (Pa. 1994). The "plain words of a zoning ordinance must be given their usual and ordinary meaning," although we "expansively" construe "permissive terms in zoning ordinances . . . ." *Bakerstown Container Corp. v. Richland Twp.*, 500 A.2d 420, 421-22 (Pa. 1985) (cleaned up); *Patricca v. Zoning Bd. of Adjustment of City of Pittsburgh*, 590 A.2d 744, 748 (Pa. 1991). We may draw upon our "common sense" in construing a zoning ordinance and reject an "absurd and unreasonable interpretation." *City of Clairton v. Zoning Hearing Bd. of City of Clairton*, 246 A.3d 890, 903 (Pa. Cmwlth. 2021) (*Clairton*); *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 901 n.13 (Pa. 2019) (*Slice*) (cleaned up).

9

tract still qualifies for the overlay district if either part is within 500 feet of Route 100. *Id.*[10] In other words, if the road "bisects" the Phase 2A and 2B tracts, then the Phase 2B tract, although more than 500 feet away from Route 100, is considered within 500 feet of Route 100. *See id.* The Zoning Ordinance does not define the term "bisects."

Turning to its second issue, the Township challenges only the construction of the term "bisected" in the Zoning Ordinance. Township's Br. at 37. Per the Township, the dictionary definition of "bisect" is "to divide into two parts," or "to divide into equal parts." *Id.* at 39 (quoting Oxford Languages Dictionary and Merriam-Webster Dictionary). The Township adds that Artisan agreed with this definition before the Board. *Id.* at 39-40 (citing, *inter alia*, N.T. Hr'g, at 63-64).

The Township illustrates its point with two diagrams. The first diagram depicts a rectangle divided by a vertical line (representing the road) splitting the rectangle into two squares. *Id.* at 40. The second diagram depicts that same vertical line (road), except roughly split into thirds, horizontally. *Id.* On the right side of the upper third of the road is one square, with the left boundary of the square aligned with the road, which represents one tract. *Id.* On the left side of the lower third of the road is the other tract, with the right boundary of the square aligned with the road. *Id.*

Using these diagrams, the Township explains why the issue of whether

---

[10] We quote the relevant provision in full:

> D. Proximity to PA 100. The AQ development tract must be located within 500 feet of a grade-separated interchange of PA 100 (the tract shall meet the proximity requirement if any part of the tract is located within 500 feet of a point on any access ramp leading to or from PA 100). If a development tract is bisected by a road, the entire tract will qualify for an AQ development if any portion of the tract on either side of the road meets the proximity requirements.

Upper Pottsgrove Twp., Zoning Ordinance § 350-187(D) (2007).

the road "bisects" or "connects" the two tracts is critical. *Id.* at 16. No party disputes that the Phase 2B tract is more than 500 feet away from Route 100. *Id.* If the road "bisects" the Phase 2A and 2B tracts, then the Phase 2B tract is construed as complying with the overlay district, *i.e.*, because Phase 2A lies within 500 feet of Route 100, Phase 2B *also* lies within 500 feet of Route 100—notwithstanding the geographic reality. *Id.* at 15-16. If the road "connects" the Phase 2A and 2B tracts, then Phase 2B does not comply with the overlay district. *Id.*

Artisan counters by initially agreeing with the definition set forth in the Merriam-Webster Dictionary: "to divide into two usually equal parts." Artisan's Br. at 31 (cleaned up). Building on that definition, Artisan points to an example sentence within the definition: "The city is bisected by the highway." *Id.* at 32 (cleaned up). Artisan thus reasons that "municipalities may contain non-contiguous areas, and division (*e.g.*, being bisected by a highway or road) does not require that the parts touch in order to have been bisected." *Id.* (cleaned up).[11]

Our Supreme Court has stated that "undefined words and phrases that appear in a zoning ordinance are to be given their plain and ordinary meaning." *Slice*, 207 A.3d at 899 (cleaned up). Both parties agree with the Merriam-Webster Dictionary's definition of bisect: "to divide into two usually equal parts." *See* Township's Br. at 39; Artisan's Br. at 3l; *Bisect*, Merriam-Webster Dictionary (last visited Nov. 12, 2024); *accord* Oxford English Dictionary ("To cut in two, divide into any two parts") (last visited Nov. 12, 2024). We substitute the definition into Zoning Ordinance § 350-187(D): "If a development tract is [divided into two equal parts or into any two parts], the entire tract will qualify for an AQ development if any portion of the tract on either side of the road meets the proximity requirements."

___

[11] The parties, understandably, did not address the trial court's reasoning because their appellate briefs were filed prior to the trial court's Rule 1925(a) opinion.

*See id.*

Instantly, the parties agree that the Phase 2B tract is approximately 300 feet away from the Phase 2A tract and more than 500 feet from Route 100. Artisan nevertheless maintains that the road merely "bisected" Phase 2B because all phases should be considered one tract. We respectfully disagree. The road simply did not and does not "cut in two" or "divide into any two parts" a larger tract of land. *See id.*; *Slice*, 207 A.3d at 899. Indeed, although not binding on us, even Artisan's witness agreed that bisect "means . . . splitting a parcel or whatever [into] two pieces," *see* N.T. Hr'g at 63-64, and that did not occur here.

By extension, we also reject the trial court's reasoning that Phase 2B was part of the same developmental tract as Phase 2A, *i.e.*, "one overall tract." Trial Ct. Op. at 5, 7. Under the trial court's interpretation, Phase 2B could be a dozen miles away from Route 100. As long as Phase 2B was connected by a road to a tract actually located within 500 feet of Route 100, Phase 2B would be subject to the senior citizen overlay district. We respectfully disagree and suggest that the trial court's interpretation strains credulity. *See Slice*, 207 A.3d at 901 n.13; *Clairton*, 246 A.3d at 903

## C. The Use Variance

We need not summarize the parties' arguments. In *Artisan I*, we remanded to have the trial court explain its reasoning on both issues. Because the trial court did not fully comply, we remain unable to discern its reasoning on the use variance. Because we are unable to conduct a meaningful review, we again remand.

## IV. CONCLUSION

For these reasons, we reverse the trial court's March 16, 2021 order to the extent that it resolved whether the property complied with the requirements of

the overlay district.  We vacate the trial court's order in all other respects.  We remand to have the trial court decide whether the Board correctly resolved Artisan's application for a use variance.


**LORI A. DUMAS, Judge**


Judge Wallace did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Artisan Construction Group, LLC :
                                  :   No. 470 C.D. 2021
                v.                :
                                    :
Zoning Hearing Board of Upper :
Pottsgrove Township, Montgomery :
County, Pennsylvania                  :
                                    :
Appeal of: Upper Pottsgrove Township :

## O R D E R

AND NOW, this 15th day of November, 2024, we REVERSE in part the March 16, 2021 order entered by the Court of Common Pleas of Montgomery County (trial court) to the extent the trial court held that the property owned by Artisan Construction Group, LLC (Artisan) met the requirements for development under the overlay district. We VACATE the order in all other respects. We REMAND to have the trial court decide whether the Zoning Hearing Board of Upper Pottsgrove Township correctly resolved Artisan's application for a use variance.

Jurisdiction relinquished.

_____
**LORI A. DUMAS, Judge**