Philip STEELEY, Jane Steeley, Kenneth B. Hill, Jr. and Dorothy D. Steeley, Appellants

v.

RICHLAND TOWNSHIP and Upper Bucks Young Men's Christian Association.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 1, 2005.
Decided May 4, 2005.
Reargument Denied July 1, 2005.

Michael D. Kracht, Perkasie, for appellants.

William T. Dudeck, Doylestown, for appellee, Richland Township.

Wendy G. Rothstein, Lansdale, for appellee, Upper Bucks Young Men's Christian Association.

BEFORE: FRIEDMAN, J., COHN JUBELIRER, J., and JIULIANTE, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Philip Steeley, Jane Steeley, Kenneth B. Hill, Jr. and Dorothy D. Steeley (Neigh-

bors) appeal from an order of the Court of Common Pleas of Bucks County, which declared that Richland Township (Township) did not err in leasing land, previously dedicated to it as open space, to the Upper Bucks Young Men's Christian Association (YMCA) for the construction of a membership based, multi-use facility. We must determine if this leasing arrangement was in accordance with law.

Spring Meadows Associates (Developer) previously owned all the land relevant to this matter. On July 27, 1998, Township approved the final record subdivision plan[1] for Developer's Planned Residential Development (PRD), "Spring Meadows Estates." The plans[2] labeled the area at issue in this matter as "Open Space A ... Open Space Proposed For Dedication As Municipal Use." (Neighbor Ex. 2.) Note 7 to the final record subdivision plan provides, "Open Space Area 'A' is offered for dedicated [sic] to Richland Township for 'Municipal Use.'" (Court Ex. 1.) Note 15 to the final subdivision plan provides, "Open space shall not be separately sold, nor shall land be further developed or subdivided, *except for Open Space Area A*." *Id.* (emphasis added). This dedication of approximately 38 acres of open space to the Township was in exchange for a density bonus[3] in the "Spring Meadows Estates" site capacity calculations. On August 12, 1999, Developer deeded to Township 38.018 acres of land and, within

the deed, included the language, "Description of Land Open Space 'A' Spring Meadow Estates, Richland Township, Bucks County Pennsylvania." (Neighbor Ex. 11.)

After the dedication and deeding of "Open Space Area A," Township entered into a lease with the YMCA for 15 of the 38 acres (Lease). The YMCA intends to construct a new YMCA facility on the property. (Testimony of YMCA Executive Director Patricia Ann Edwards, Tr. at 35.) The Lease contained a 99 year term, with the right to renew for an additional 99 years, and was exchanged for the following consideration given by the YMCA to Township: 1) yearly payment of $1.00; 2) payment for the construction of an entrance and access road; 3) assisting Township in securing grants for development of park systems; 4) allowing Township residents to use the fields on the property; and 5) allowing Township to expand the YMCA's parking facilities to create extra parking for the property. (Lease Agreement, April 15, 2002; Neighbor Ex. 4.)

The YMCA is a nonprofit, private member organization. Membership requires the payment of a fee, and nonmembers can use the proposed YMCA facilities if they pay a guest fee. (Tr. at 33–34.) The YMCA employs approximately 30 full-time employees at its current locations, with most working in the child-care center. Presently, the YMCA occupies two separate facilities, but plans to move every-

---

1. The record indicates that there were two recordings of record plan sheets: 1) those applicable for Phase I of construction; and 2) those applicable for Phase II. However, "[t]he only thing that would have changed in those two filings of record plan sheets was, in fact, the caption above the title block for phase one and for phase two recording purposes. The notes would have been the same." (Tr. at 28.)

2. The other portions of open space dedicated to Township constituted deed restricted por-

tions of building lots, which were similarly labeled Open Space "C," "E," "F," and "G." (Note 7 to the Final Subdivision Plan; Ct. Ex. 1.)

3. Samuel D. Costanzo, a partner in Van Cleef Engineering Associates, testified that the "density bonus open space acknowledgment" found on record plan sheet 3 of 3, indicates that Developer transferred 38 acres of open space in exchange for a ten percent increase in the site capacity calculations for its planned unit development. (Tr. at 13–16.)

thing (fitness room, gymnastics center, basketball and volleyball area, fitness classes, swimming pool, child-care center and racquetball courts) to the new site and keep only the tennis courts at one of the old locations. (Tr. at 33–35.) The schematic site plan for the proposed YMCA and its attendant amenities depicts, among other things, 545 parking spaces (267 for the YMCA and 278 for the Community), access roads, community pool and pool pavilion, retention pond, maintenance shed and band shell. (Neighbor Ex. 4.)

After the YMCA entered into the Lease with Township, Neighbors filed a declaratory judgment action complaining, among other things, that the proposed use by the YMCA is not "open space" as defined by Township Zoning Ordinance (Ordinance). Neighbors sought, *inter alia*, declaratory relief voiding the Lease, specifying that Township may not use the 38 acres of open space except for recreational, resource protection, amenity or buffer uses, and establishing that any use of the 38 acres of open space must be freely accessible to the public.

On January 20, 2004, a trial was held on Neighbors' declaratory judgment action. At the trial, Neighbors presented, *inter alia*, the testimony of Samuel D. Costanzo, a partner in the engineering firm Van Cleef Engineering Associates, who reviewed the subdivision plans for "Spring Meadows Estates." In discussing the change of the open space from a previous designation on subdivision plans as "parkland use" to the current designation of "municipal use," he testified that, in his opinion, it was always intended that the area designated as open space eventually would be used for a municipal purpose, *e.g.*, a park, a municipal building, a police station. (Tr. at 23.)

Both Township and Neighbors presented the testimony of Stephen Sechriest, Township Manager, who stated that the lease of property to the YMCA "seemed [to be] an efficient, economic way to work with a nonprofit, private sector organization to provide facilities that the township lacked." (Tr. at 110.) He further stated that:

[T]he idea of the Y[MCA] facility was . . . the township did not and still does not have a similar type of recreational facility. One of the things is many municipalities in recent years have been constructing community facilities similar to this, and I saw this as a way that the township could obtain these types of facilities at a lower cost than the township having to float a bond issue or raise taxes to construct such a facility.

(Tr. at 110.) In discussing Township's Comprehensive Plan, Sechriest stated that one of the goals of that Plan was for Township to "[a]nalyze the need for additional neighborhood and community parks and recreational areas, especially in the [area of the proposed YMCA]." (Tr. at 124–25.) Sechriest also explained that an objective of Township's recreation plan was to "[p]romote a variety of civic, cultural and neighborhood amenities such as parks, museums, galleries, day-care centers and recreation centers." (Tr. at 128.)

On May 17, 2004, the trial court denied Neighbors' request for relief and held that "[g]iven the Township's stated objectives regarding recreational facilities, the subdivision plan notes and applicable zoning ordinance, the Township acted well within its discretion in entering into the lease with the YMCA." (Trial Ct. Op. at 13.) It reasoned that implicit in the language of Section 256 of the Ordinance—which prohibits "non-recreational" uses and parking lots for such uses, construction of roads, and construction of storm water detention or retention facilities in an open space area—is that "land occupied by recreation-

al buildings and parking areas used for recreational purposes is in fact 'Open Space.'" (Trial Ct. Op. at 7.) Furthermore, the trial court found nothing in the subdivision notes to restrict Township's ability to lease the land to the YMCA, reasoning that Note 15 to the subdivision plan specifically allows for the sale of "Open Space Area A." *Id.*

Neighbors filed post-verdict motions, which the trial court subsequently denied. Neighbors then filed a Notice of Appeal to this Court raising numerous issues.[4] On November 8, 2004, the trial court issued a Supplemental Opinion, which clarified that many of the issues Neighbors raised were, in fact, addressed in its May 17, 2004 Opinion, and noted that Neighbors did not raise several of the other issues at the trial, thus, waiving them for purposes of appeal.

Neighbors argue the following properly preserved issues to this Court:[5] (1) the Lease violates Ordinance limitations on the use of open space provided in Ordinance Sections 256, 531, and 534; (2) the Lease violates a public trust/restrictive covenant to use the land only as "open space" or for a "municipal use"; (3) the Lease is effectively a sale and, regardless of whether it is construed as a sale, it is subject to the bid requirements found in Section 1503 of The Second Class Township Code;[6] and (4) the Lease constitutes a non-statutorily authorized gift to the YMCA by Township.

 Preliminarily we note that underlying several of Township and the YMCA's arguments is the notion that the 38 acres of land deeded to Township was

not actually "dedicated" or "deeded" as open space, but, rather, merely "described" as such. This Court cannot agree with that characterization. The Developer, in fact, had to dedicate the 38 acres of open space in question to the Township in order to receive the density bonus from the Township. The density bonus, consequently, permitted a ten percent increase in the PRD's site capacity calculations in exchange for the grant of open space. In addition, the language of the deed "granted" to Township "Description of Land Open Space 'A'" as "bounded and described" in the Record Plan; read in context, this language does not merely "describe" the parcel as open space. In construing a deed, absent fraud, accident or mistake, none of which is alleged here, we consider only "what the words mean." *Stonybrook Condominium Ass'n. v. Jocelyn Properties, Inc.*, 862 A.2d 721, 725 (Pa.Cmwlth.2004). Here, when we focus on the plain language of the deed, it is evident that one cannot "grant" a "Description of Land"; therefore, what was granted could only be open space labeled as "Open Space 'A'." Because we conclude that the 38 acres was designated in the record plans and deeded to the Township as open space, we now turn to the question of whether the Lease and the YMCA's proposed use of the 15 acres violated the Ordinance.

The operative limitations on the use of open space are found in Section 256 of the Ordinance. Section 256 of the Ordinance defines "Open Space" as:

> Open space is land used for *recreation*, resource protection, amenity, or buffers;

---

4. This Court's standard of review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence, and whether the trial court committed an error of law or abused its discretion. *Juniata Valley Sch. Dist. v. Wargo*, 797 A.2d 428 (Pa.Cmwlth. 2002).

5. Some overlapping issues were merged for conciseness.

6. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66503.

and is protected by the provisions of this Ordinance and the Subdivision and Land Development Ordinance to ensure that it remains in such uses. Open space *shall not include* land occupied by *nonrecreational buildings or structures, roads or road rights-of-way, parking areas for nonrecreational uses,* land reserved for future parking areas for nonrecreational uses, *stormwater detention or retention basins,* or the yards or lots of dwelling units. Open space dedicated to Richland Township may be used for general municipal purposes as determined by the Governing Body.

Open Space shall be used in accordance with Section 531 [7] *Open Space Designation;* open space shall be owned and maintained in accordance with Section 534 [8] *Ownership of Open Space.* ...

Ordinance § 256 (emphasis added).

Accordingly, pursuant to Sections 256 and 534 of the Ordinance, use of open

7. Section 531, entitled *"Open Space Designation,"* describes what must be included on a record plan for land held as open space. That section provides, in relevant part:

> All land held for open space shall so be designated on the subdivision and land development plans. Such plans shall contain the following information:
> a. A statement that the open space shall not be separately sold or further subdivided, except for transfer to the municipality or a conservation organization approved by the municipality. And, a statement that the open space land shall not be further developed, *except for recreational facilities.*
> b. The use(s) of the open space shall be indicated on the plans. In designating the use(s), one or more of the following classes shall be used:
> ...
> (3) Recreation Area: An area designated for a specific recreational use ... including but not limited to tennis courts, basketball courts, swimming pools, playfields and tot lots. ...

space can include recreational uses that do not contain, among other things: non-recreational buildings or structures, roads, rights-of-way, parking areas for nonrecreational uses, and storm water detention or retention basins. This brings our analysis to the question of whether the proposed YMCA is, in fact, a "recreational" use not containing the above-enumerated prohibited uses.

When interpreting the language of zoning ordinances, this Court construes those ordinances according to the following rules of construction:

> Although the Statutory Construction Act, 1 Pa.C.S. 1501–1991, does not apply expressly to zoning and subdivision ordinances, the principles contained in that act are followed in construing a local ordinance. *Patricca v. Zoning Board of Adjustment,* 527 Pa. 267, 274, 590 A.2d 744, 747 (1991); *Council of Middletown Township v. Benham,* 514 Pa. 176, 523

Ordinance § 531 (emphasis added). This Court recognizes that the record plans for the 38 acres do not contain the exact designation required in Section 531; however, because of our holding in this case, we need not address this omission.

8. Section 534 of the Ordinance, entitled *"Ownership of Open Space,"* provides, in relevant part:

> Any of the following methods may be used to preserve, own, or maintain open space: ... dedication in fee simple. ... The following specific requirements are associated with each of the various methods.
> ...
> c. Fee–Simple Dedication: The municipality may, but shall not be required to, accept any portion or portions of the open space provided the following conditions are met:
> (1) Such land shall be freely accessible to the public.
> (2) There shall be no cost to the municipality involved.
> (3) The Municipality agrees to and has access to maintain such lands. ...

A.2d 311 (1987). Words and phrases of local ordinances shall be construed according to the rules of grammar and according to their common and approved usage. 1 Pa.C.S.1903(a); *Patricca,* 527 Pa. at 274, 590 A.2d at 747–48. Zoning ordinances should be construed in a sensible manner. *Council of Middletown Township,* 514 Pa. at 187, 523 A.2d at 317. In interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning, 1 Pa.C.S.1903(a), and any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Appeal of Mt. Laurel Racing Association,* 73 Pa.Cmwlth. 531, 534–35, 458 A.2d 1043, 1044–45 (1983). *Trojnacki v. Bd. of Supervisors Solebury Township,* 842 A.2d 503, 509 (Pa.Cmwlth. 2004) (quoting *Tobin v. Radnor Township Bd. of Comm'rs,* 142 Pa.Cmwlth. 567, 597 A.2d 1258, 1264 (1991)).

The evidence of record leads to the conclusion that the future YMCA, as proposed and planned, will not conform to Section 256 of the Ordinance. As all parties acknowledge in their briefs to this Court, the proposed YMCA will provide some non-recreational activities, such as a daycare facility and classroom instruction. Attendant to those non-recreational uses, and the recreational uses, are the 545 parking spaces and access roads (Neighbor Ex. 4–8), both of which are uses of open space specifically disallowed by Section 256. Moreover, the proposed YMCA, as described on the site plan (Neighbor Ex. 4), will require the construction of a storm water detention/retention basin, which is another use of open space specifically disallowed by Section 256 of the Ordinance. While Township and the YMCA argue that these non-recreational uses are merely "ancillary" to the primary and allowed recreational[9] use of the proposed YMCA, we conclude that, even if they are deemed ancillary, a question we need not decide, they are, nonetheless, uses specifically prohibited by Section 256 and, therefore, in violation of it.[10]

The Township has enacted its Ordinances and must abide by them in its undertakings, without regard to how beneficial its intentions are. Thus, although its objectives of providing recreational facilities and child care to its citizens are laudable, this does not eliminate the need for the Township to accomplish these goals in accordance with the law. Therefore, based upon the foregoing analysis, we conclude that the proposed use violates the Ordinance and, so, must reverse the order of the trial court.[11]

### ORDER

**NOW,** May 4, 2005, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby reversed.

---

9. While there is no definition for "recreation" in the Ordinance, Section 531 *does* define "Recreation Area" as "[a]n area designated for a specific recreational use ... including but not limited to tennis courts, basketball courts, swimming pools, playfields and tot lots."

10. Because of our disposition, we do not reach the issue of whether the proposed use

fails to meet the limitation in section 534 that the open space be "freely accessible" to the public.

11. Because we conclude that the proposed use by the YMCA violates multiple sections of the Ordinance, we need only address the first issue presented.