The Graduate Hospital *v.* Philadelphia Zoning Board of Adjustment. S. David Fineman, Esq. et al., Appellants.

Argued December 8, 1983, before Judges WILLIAMS, JR., BARRY and BARBIERI, sitting as a panel of three.

*Lenard L. Wolffe, Pechner, Dorfman, Wolffe, Rounick & Cabot,* for appellants, S. David Fineman, Esquire et al.

*Mary Rose Cunningham,* Chief Assistant City Solicitor, with her, *Mark A. Aronchick,* Acting City Solicitor, for appellants, Philadelphia Zoning Board of Adjustment.

*Andrew J. Gowa,* with him, *Larry Haft, Blank, Rome, Comisky & McCauley,* for appellee.

*Harold R. Berk,* for Amicus Curiae, Addison Street Preservation Committee.

OPINION BY JUDGE BARRY, May 11, 1984:

This appeal is from an order of the Court of Common Pleas of Philadelphia which reversed an order of the Philadelphia Zoning Board of Adjustment (Board). The Board had sustained an appeal filed by the instant appellants, S. David Fineman and other neighborhood residents, against an administrative decision of the Philadelphia Department of Licenses and Inspections to issue a permit for animal housing, research laboratories and offices in a building at 415 South 19th Street in Center City Philadelphia.

The building in question was originally owned by The University of Pennsylvania, which for over fifty years owned The Graduate Hospital (Hospital), appellee herein. When the Hospital separated from The University of Pennsylvania in 1977, the building was conveyed to the Hospital by deed dated September 21, 1977. The building has five floors consisting of approximately 5,000 square feet on each floor.

In 1966, The University of Pennsylvania applied for a permit to use the building for medical offices and research laboratories not to exceed 2,200 square feet. At that time, the area was zoned "C-2". The Philadelphia Code (Code) provided then, as it does now:

§14-303. "C-2" Commercial District

(1) Use Regulations—General. The uses permitted in this district shall be:

. . . .

(c) As respects the rendering of services, shall be with the ultimate consumer.

. . . .

(i) Laboratories (analytical, chemical, and research) and assay offices, not to exceed 1,500 square feet in gross floor area. . . .

Since the space to be used for laboratories exceeded the area limitation in the Code, the building owner obtained a variance on October 26, 1966, allowing 2,200 square feet to be used for research laboratories. In May, 1975, the area in which the building was located was rezoned to "R-10A" Residential by City Council, thereby giving the building the status of a nonconforming use.

On July 31, 1981, the Hospital applied to the Department of Licenses and Inspections for a permit to remodel the building and use it for offices, research laboratories and animal housing. Prior to the remodeling, three of the building's five floors had been used to treat medical and dental patients. The permit was issued "over the counter" that same day.

Remodeling was commenced in November, 1981, and a dumpster was placed on the sidewalk of Addison Street to facilitate removal of the debris generated by the remodeling. On December 3, 1981, a construction sign was placed on the building, which

named the various individuals in charge of different phases of the construction, indicated that a certain individual was the "Architect Animal Housing."

On January 27, 1982, appellants, neighborhood residents, filed an appeal with the Zoning Hearing Board of Adjustment, challenging the issuance of the permit by the Department of Licenses and Inspections because the Hospital was changing the nature of its non-conforming use. A public hearing was held by the Board and on May 24, 1982, the Board sustained the appeal and revoked the permit. The Hospital filed an appeal to the Court of Common Pleas. Following oral argument, the Court, on August 16, 1982, held that the January 27, 1982 appeal to the Board was untimely; therefore, the court quashed the appeal to the Board and reinstated the permit. This appeal followed.

Appellants argue, *inter alia,* that the trial court erred in holding that the appeal to the Board was untimely. Our scope of review in cases of this type is well settled. "Where the trial court takes no additional evidence, our scope of review is to determine whether the zoning hearing board committed an error of law, abused its discretion, or made findings not supported by substantial evidence." *Atlantic Richfield Co. v. City of Bethlehem,* 69 Pa. Commonwealth Ct. 6, 13, n. 3, 450 A.2d 248, 252, n. 3 (1982).

Rule 1 of the Board's regulations provide, "Appeals to the Board shall be taken within ten (10) days from the date of the order, requirement, decision, or determination which is the subject of appeal." The permit in this case was issued on July 31, 1981, but that date is not controlling, as none of the appellants had knowledge that the permit had been issued at that time. As we have stated, "This is not to say that the Board may not allow a late appeal where the appellant did not know, or have reason to know, of the departmental decision from which he seeks to appeal." *Her-*

*delin v. Greenberg,* 16 Pa. Commonwealth Ct. 405, 408-09, 328 A.2d 552, 555 (1974). Rather, the court reasoned that the erection of the construction sign in early December, 1981, placed appellants on notice. Since the appeal was not filed until January 27, 1982, the court found the appeal untimely.

The court relied on *Herdelin* and *Lycoming Burial Vault Co. v. Zoning Hearing Board,* 41 Pa. Commonwealth Ct. 294, 399 A.2d 144 (1979), in arriving at its conclusion. Neither of those cases is controlling. In both, there was no question that the protesting parties had actual knowledge of the challenged departmental action and yet failed to appeal promptly after acquiring such knowledge. Such is not the case in this matter.

As stated in Ryan, *Pennsylvania Zoning Law and Practice* §9.4.3:

As the cases indicate, the timing of an appeal by protestants can pose a severe problem. Neighboring property owners generally receive no notice that a permit has been issued. Their first knowledge of that fact is likely to be the commencement of construction. If protestants are to have a reasonable right of appeal, they should not be barred unless they had knowledge of the issuance of the permit in sufficient time to permit an appeal within the specified period. On the other hand, if an appeal is allowed after construction has progressed, the applicant may suffer a great loss. The (MPC) resolves the difficulty in favor of the protestant, who is permitted to exceed the 30-day appeal limit if he "alleges and proves that he failed to receive adequate notice" of the approval of the application. . . . Since there is no requirement that a zoning officer give notice of the approval of most zoning applications, the

practical effect of the Code is to permit an appeal by a protestant filed within 30 days of the issuance of a permit, or promptly after the protestant learns of its issuance.[1]

In the instant case, the only finding of fact of the Board relating to the question of actual notice is as follows:

18. Although the appellee contended that the appellants' appeal was not taken until more than six months after the permit was issued, the appellants demonstrated that the sign was, in fact, erected approximately 45 days prior to the appeal and that the sign, not one that the City of Philadelphia customarily erects, would not truly alert residents of a proposed change of use.

Appellant Fineman testified, however, that the sign in question alerted him of the proposed change, the construction for which had already commenced. The trial court concluded that actual notice was given to appellants as of the time the sign was erected. We believe, however, that this conclusion cannot be drawn from the record, especially since the posting of the sign has no legal significance in and of itself and an investigation into the matter may well have been required before determining an appeal was in order. In determining the timeliness issue, we must decide whether appellants acted promptly after receiving actual notice of the proposed change. We are unable, on the present record, to make such a decision which will ultimately affect all of the parties involved, and a remand to develop an adequate record on this issue is necessary.

---

[1] These comments, when speaking of the Municipalities Planning Code, apply with equal force to the appeal period applicable to Philadelphia.

## Order

And Now, May 11, 1984, the order of the Court of Common Pleas of Philadelphia, at No. 7916 May Term 1982 is vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.