**RIVERFRONT DEVELOPMENT GROUP, LLC, Appellant**

v.

**CITY OF HARRISBURG ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2014.
Decided Jan. 30, 2015.

John W. Purcell, Jr., Harrisburg, for appellant.

Jennifer A. Nachamkin, Harrisburg, for appellee.

BEFORE: RENÉE COHN JUBELIRER, Judge, and PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Riverfront Development Group, LLC (Applicant) appeals from the March 13, 2014 order of the Dauphin County Court of Common Pleas (trial court), affirming the decision of the City of Harrisburg Zoning Hearing Board (Board) that denied Applicant's variance and special exception application.

### Facts/Procedural History

Applicant filed an application for a special exception and a variance from the City of Harrisburg Zoning Code (Zoning Code) section 7–309.16,[1] which the Board interpreted as providing a restriction of a maximum of two units per lot, in order to erect two, two-unit rental apartment buildings at 1308 Green Street, Harrisburg, Pennsylvania (Property) and, in conjunction therewith, to waive portions of the setback and accessory parking requirements. (Board's Finding of Fact No. 9; Reproduced Record (R.R.) at 1–5, 54–57, 96.)[2] The Prop-

---

1. Zoning Code, § 7–309.16.

2. We note that Applicant's reproduced record does not include the lower case "a" following

erty is an approximately 38–foot by 79–foot vacant lot located in Residential Limited Zone B (RLB), which is regulated by Zoning Code section 7–309.16. Applicant will provide no on-site accessory parking. To fit the apartment buildings onto the lot, Applicant seeks partial waivers of the side-yard and rear-yard setback requirements. Applicant also submitted a lease dated February 19, 2013, under which the owner of a parking lot on the next block agreed to provide four parking spaces for one year to the inhabitants of the apartment units on the Property.[3] (Board's Findings of Fact Nos. 4, 7–8, 10.)

After reviewing Applicant's application, the Harrisburg Planning Commission unanimously voted to recommend that the Board approve the application because "[t]he request will infill an existing vacant lot and is generally in keeping with the characteristics and design of the existing neighborhood." (R.R. at 53.) The Planning Commission recommended that the application be approved with the condition that the Harrisburg Architectural Review Board and the Harrisburg City Council (City Council) approve the proposed new construction. (R.R. at 53.)

The Board held a hearing on May 20, 2013, and the Board accepted into evidence Applicant's variance and special exception application, an aerial photograph of the Property, the deed to the Property, the building plan, the lease for the parking spaces, and photographs of the Property and the neighboring properties. However, the Board noted a deficiency in the public notice for the hearing, specifically, that the publication and posting of Applicant's application advertised a hearing on a special exception only and did not mention variances relating to the construction of four units on a lot zoned for two units and off-site parking. The Board also suggested that Applicant consider subdividing the Property in order to avoid any need for zoning relief. Accordingly, the Board granted Applicant's request for a continuance. (R.R. at 64–66, 68–70.)

At the July 5, 2013 hearing, Applicant testified that he "read the [Zoning Code] and the [Zoning Code] does not stop me from building two buildings on one lot."[4] (R.R. at 81.) He also testified that the Board's suggestion to subdivide the Property would create a bigger hardship because it would be more difficult for him to meet the setback requirements. (R.R. at 89.) Applicant acknowledged that there is always the option to have fewer units on the Property but added that he chose to have four units because he thought that his development plan "fit in the neighborhood better." (R.R. at 90.) Applicant further acknowledged that the design plans for the apartment buildings do not include outside entrances for each unit in accordance with the Zoning Code, but he stated that an outside entrance for each unit could easily be added. (R.R. at 91.)

David Koppenheffer (Koppenheffer), a neighbor, testified that he opposes the entire development because he is concerned that property values will be diminished. He stated that constructing apartments constitutes a completely different use of the neighborhood. However, Koppenheffer acknowledged that the lot is currently vacant and that if the City of Harrisburg deems the development legal, there is

the page number as required by Pa.R.A.P. 2173.

3. The lease is from March 1, 2013 to February 28, 2014. (Board's Finding of Fact No. 10.)

4. The Board responded that it interpreted the Zoning Code as allowing only one building on one lot. (R.R. at 85.)

nothing that he can do about it. At the conclusion of the hearing, the Board unanimously voted to disapprove the variance request. (R.R. at 87–88, 93.)

In its written decision and order issued on July 15, 2013, the Board found that there are no unique physical circumstances or conditions of the Property that create an unnecessary hardship and that Applicant presented no evidence that the Property cannot be used in conformity with the Zoning Code. (Board's Findings of Fact Nos. 13–14.) The Board noted that the lot is zoned for a maximum of two units and stated that Applicant needs zoning relief that includes the following:

(1) a variance for use, for a four-dwelling unit rather than the permitted two units; (2) a variance to permit accessory parking on a non-abutting lot ( [Zoning Code] § 7–319.1); (3) special exceptions for partial side and rear-yard setback reductions; and (4) a special exception or a variance from the requirement that "two-family dwellings require separate outdoor or vestibule entrance on the ground floor, front and rear, for each family" ( [Zoning Code] § 7–309.16(a)(1) incorporating [Zoning Code] § 7–309.14(a)(1)).

(Board's decision at 2–3.) The Board further noted that Applicant's application for relief fails to request a variance or special exception from the separate outdoor entrance requirement. The Board stated that the application also fails to address the height requirement found in Zoning Code section 7–309.16(c)(1).

Citing Zoning Code sections 7–309.1,[5] 7–309.2,[6] and 7–309.3,[7] the Board stated that

---

5. Zoning Code, § 7–309.1. Section 7–309.1 provides that the following buildings, structures, and uses are permitted in the Residential Single Family Zone:

(1) single-family detached dwellings with floor space of not less than four hundred (400) square feet or more; [ ]

(2) churches and religious buildings; public, private or parochial schools offering courses in general education; accredited colleges; libraries; community assembly halls; and governmental buildings and public utility buildings or structures, provided ·the Zoning Hearing Board, upon appeal, finds that their location is necessary to the service of the zone and approves the location and design; [ ]

(3) publicly owned or publicly operated parks, play spaces and other recreational facilities with customary incidental buildings, structures and uses; and

(4) home occupations as defined and regulated in Chapter 7–323.

*Id.*

6. Zoning Code, § 7–309.2. Section 7–309.2 provides that only the following buildings, structures, and uses are permitted in the Residential Semi–Detached Zone:

(1) all buildings, structures and uses permitted in an RSF Zone;

(2) two-family detached dwellings, having a separate outdoor or vestibule entrance on the ground floor, front and rear, for each family and having a floor area of four hundred (400) square feet or more for each family;

(3) pairs of single-family semi-detached dwellings where the attachment extends not over seventy-two (72) feet deep, including porches, and having a floor area of four hundred (400) square feet or more for each family;

(4) three- or four-family manor-group dwellings;

(5) home occupations as defined and regulated in this Code.

*Id.*

7. Zoning Code, § 7–309.3. Section 7–309.3 provides that the following buildings, structures, and uses are permitted in Residence Zone No. 3:

(1) all buildings, structures and uses permitted in an RSD Zone;

(2) two- or three-family semi-detached dwellings, provided that each family unit has floor space of four hundred (400) square feet or more and a separate outdoor or vestibule entrance, front and rear, except that in case of conversion or remodeling of existing buildings, the sep-

it disagreed with Applicant's interpretation of the Zoning Code that "the restriction to 'one or two-family' dwellings means that [Applicant] can erect as many one or two-family dwellings on a lot as he wants to." (Board's decision at 4.) The Board determined that Applicant's interpretation of the Zoning Code would "eliminate the idea of single-family-per-lot-neighborhoods, or two-family-per-lot-neighborhoods by allowing a developer to increase the number of structures on the lot, regardless of the zoning limitations" and stated that this interpretation "flies in the face of the clear words, as well as the intent of the Code." (Board's decision at 4.) Thus, the Board denied the application on the ground that Applicant failed to prove entitlement to a variance to erect four dwelling units on the Property zoned for two dwelling units; the Board concluded that the parking, dimensional, or design issues need not be reached. The Board also advised Applicant that he might seek subdivision approval of the Property from City Council. Applicant appealed to the trial court.

By memorandum and order dated March 13, 2014, the trial court, citing *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55, 57–58 (Pa. Cmwlth.1999), and giving the Board's interpretation of its own Zoning Code great weight and deference, determined that the Board's interpretation of its Zoning Code as allowing only one dwelling on the lot in question is reasonable. The trial court concluded that Applicant's interpretation of the Zoning Code, that as many one- or two-family dwellings as feasible can be built on a lot, is contrary to the Zoning Code's wording and intent. Thus, the trial court affirmed the Board's decision.

■ On appeal to this Court,[8] Applicant argues that: (1) the Board abused its discretion in creating a prohibition of more than one dwelling per lot that is not contained in the Zoning Code; and (2) Applicant's side-yard setback special exception should be deemed approved.

## Discussion

### Whether the Board Arbitrarily and Improperly Created a Rule Not Contained in the Zoning Code

■ Applicant first argues that the Board abused its discretion in interpreting the Zoning Code contrary to its plain meaning. "[I]t is the governing body of the municipality which has the power to enact laws to regulate land use pursuant to the police power." *Hill v. Maxatawny Township Zoning Hearing Board*, 142 Pa. Cmwlth. 539, 597 A.2d 1245, 1248, 1251 (1991) (striking conditions imposed by the

---

arate entrances may be from a common hall or stairhall [sic];
(3) detached multiple dwellings;
(4) hospitals or other similar institutions for human beings for other than contagious or mental diseases if in detached buildings twenty (20) feet or more distant from any line of another lot;
(5) detached or semi-detached buildings used for studios, offices or laboratories for doctors, dentists, or other professionals; [ ]
(6) professional offices, studies, studios, or galleries when contained partially or wholly within a new building or an expansion or extension of an existing building. In no case, however, shall the floor

area ratio devoted to such use exceed two to one (2:1);
(7) commercial and vocational schools when contained partially or wholly within a new building or an expansion or extension of an existing building.
*Id.*

8. When the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion. *Lamar Advertising of Penn, LLC v. Zoning Hearing Board of Deer Lake*, 915 A.2d 705, 709 n. 9 (Pa.Cmwlth.2007).

Board because the zoning ordinance did not contain regulations pertaining to the imposed conditions and the Board was without the authority to do so). Zoning hearing boards have been specifically delegated powers by the Legislature to hear and decide whether applications for variances and special exceptions should be granted or denied according to *express standards and criteria*. Sections 910.2 and 912.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, 53 P.S. §§ 10910.2, 10912.1. "Zoning boards ... must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with applicable law." *Greth Development Group, Inc. v. Lower Heidelberg Township Zoning Hearing Board*, 918 A.2d 181, 187 (Pa.Cmwlth.2006) (citation and quotations omitted). "[T]he Board is required to apply the terms of the Zoning Ordinance as written rather than deviating from those terms based on an expressed policy." *Id.*

■ Here, we are asked to interpret the following provisions. Section 7–309.16(a) and (c) of the Zoning Code, governing an RLB, states, in relevant part, as follows:

(a) In an RLB Zone, only the following buildings, structures and uses shall be permitted:

(1) all uses, buildings and structures permitted in [Residential Limited Zone A (RLA) ] [found in Zoning Code section 7–309.14];

(2) home occupations as defined and regulated in this Code.

* * *

(c) Dimensional Requirements.

(1) No new building, structure, expansion, or enlargement in an RLB Zone shall exceed forty-five (45) feet in height, and no new princi-

pal building or structure shall be less than twenty (20) feet in height; provided, however, that within these limitations no new principal building or structure shall vary by more than fifteen percent (15%) from the average height of the principal buildings on all abutting properties.

(2) In an RLB Zone, each lot shall have front, side and rear yard setbacks of not less than the depth or width indicated below:

(A) front yards: a depth of at least five (5) feet or conforming to the existing setback within the block;

(B) side yards:

(i) a width of at least ten percent (10%) of the lot width, except in the case of permitted structures sharing a party wall where no side yard is required;

(ii) the width of a side yard abutting a major street shall be at least five (5) feet;

(C) rear yard: depth of at least ten (10) feet.

Zoning Code, § 7–309.16(a), (c). Section 7–309.14(a)(1)–(2) of the Zoning Code, governing an RLA, provides:

(a) In an RLA Zone, only the following buildings, structures and uses shall be permitted:

(1) *one or two-family detached dwellings having a floor area of four hundred (400) square feet or more for each family.* Two-family dwellings require separate outdoor or vestibule entrance on the ground floor, front and rear, for each family;

(2) one or two-family semi-detached and attached dwellings having a floor area of four hundred (400)

square feet or more for each family. Two-family dwellings require separate outdoor or vestibule entrance, front and rear, for each family; provided, however, that in cases of conversion or remodeling of existing buildings, the separate entrances may be from a common hall or stair hall[.]

Zoning Code, § 7–309.14(a)(1)–(2) (emphasis added). The specific question presented on appeal is whether it is clear from the above language that there is a limitation on the number of units permitted per lot.

■ A zoning hearing board must enforce the terms of a zoning code as written without imposing its own concept of how an ordinance should have been drafted. *Greth.* In *Greth*, a developer filed an application for a special exception with the zoning hearing board in order to construct 82 single-family detached dwellings in an "A–1 zone," a zone where the intended development was permitted by §pecial exception only. According to the language of the applicable zoning ordinance, a special exception may be granted for such development so long as "public or community sewer and water facilities are provided." *Id.* at 186. The developer also intended to construct 77 housing units on the portion of the same property located in an "R–6 zone," a zone where the intended development was permitted by right.

There were 110 individual sewer units available between the two zones. In order to meet the requirements of the zoning ordinance, each lot in both zones had to have access to an individual sewer unit. The zoning hearing board denied the application because the public sewer requirements had not been met. The zoning hearing board stated that the development in the R–6 zone had already commenced and 77 individual sewer units must be allocated to that project because a "by right"

zone must be developed before a "by special exception" zone. Thus, the zoning hearing board determined that the remaining 33 of the 110 individual sewer units were inadequate for the proposed construction of 82 single-family detached dwellings in the A–1 zone. The common pleas court affirmed the zoning hearing board's decision.

On appeal to this Court, the developer argued that the zoning hearing board lacked the authority to allocate the 77 individual sewer units to the R–6 zone instead of the A–1 zone. We noted that zoning hearing boards are not legislative bodies and that the function of a zoning hearing board is to enforce a zoning ordinance rather than impose a preferred version of how the zoning hearing board desires the zoning ordinance to be written. We concluded that, because there was no language in the zoning ordinance that required a "by right" zone to be developed before a "by special exception" zone, the zoning ordinance did not require that the R–6 zone be developed before the A–1 zone. Thus, we determined that the zoning hearing board "erred in substituting its version of what it believed the Zoning Ordinance should state for that which was actually legislated by the Township." *Id.* at 188. Accordingly, we reversed the trial court's order and remanded for consideration of whether the developer's application for a special exception met the necessary criteria.

As we opined in *Greth*, the Board must not substitute its version of the Zoning Code and must adhere to the language of the Zoning Code as written by City Council. Here, there is no specific language in Zoning Code sections 7–309.14(a) or 7–309.16(a) that restricts the number of one- or two-family dwellings permitted on a

given lot.[9] Section 7–309.14(a) of the Zoning Code permits the construction of "one or two-family detached dwellings having a floor area of four hundred (400) square feet or more for each family" in an RLB so long as the buildings are in conformance with the remainder of the Zoning Code, specifically the dimensional requirements found in section 7–309.16(c) of the Zoning Code. This language is susceptible to two different interpretations. The Board argues that, in interpreting its own ordinance, the language of the Zoning Code prohibits the construction of more than one two-family unit per lot in an RLB. However, Applicant asserts that section 7–309.14(a) allows for the construction of as many units as feasible within the dimensional restrictions of the Zoning Code, so long as the units are one- or two-family.

In interpreting the Zoning Code, the Board must follow section 7–301.1 of the Zoning Code, which states that:

> The provisions of this Zoning Code shall be the **minimum requirements** for the promotion, protection and facilitation of public health, safety, morals, and general welfare, coordinated and practical community development, property density of population, provision of adequate light and air, and for the prevention of blight, congestion and overcrowding.

Zoning Code, § 7–301.1 (emphasis added).

▬▬ The Board also has an obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use when interpreting its own Zoning Code. *Albert v. Zoning Hearing Board of North Abington Township*, 578 Pa. 439, 854 A.2d 401, 405 (2004); *Church of the Saviour v. Tredyffrin Township Zoning Hearing Board*, 130 Pa.Cmwlth. 542, 568

A.2d 1336, 1338 (1989). Any doubt must be interpreted in favor of the landowner. *Kissell v. Ferguson Township Zoning Hearing Board*, 729 A.2d 194, 197 (Pa. Cmwlth.1999). "It is an abuse of discretion for a Board to narrow the terms of an ordinance and further restrict the use of property." *Church of the Saviour*, 568 A.2d at 1338. "While the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit." *Borough of Fleetwood v. Zoning Hearing Board of Borough of Fleetwood*, 538 Pa. 536, 649 A.2d 651, 656 (1994); *see Beers ex rel. P/O/A Beers v. Zoning Hearing Board of Towamensing Township*, 933 A.2d 1067, 1069 (Pa.Cmwlth.2007). "In interpreting zoning ordinances, this Court relies upon the common usage of the words and phrases contained therein and will construe that language in a sensible manner." *Galzerno v. Zoning Hearing Board of Tullytown Borough*, 92 A.3d 891, 894 (Pa.Cmwlth. 2014); *see Light of Life Ministries, Inc. v. Cross Creek Township*, 560 Pa. 462, 746 A.2d 571, 573 (2000) ("[Z]oning ordinances are to be construed in accordance with the plain and ordinary meaning of their words.") (citation and quotations omitted). If possible, a zoning ordinance must be interpreted to give effect to all of its provisions. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a).

Sections 7–309.14 and 7–309.16 of the Zoning Code permit "one or two-family detached dwellings" without specifying exactly how many detached dwellings are permitted on each lot. City Council drafted this language by placing a hyphen in between the words "two" and "family," thus signifying that "two-family" describes

---

9. *Indeed, at oral argument, the Board's attorney admitted that there is no language in the* Zoning Code *restricting the construction of only one building per lot in an RLB Zone.*

the type of "detached dwellings" permitted rather than the number of "detached dwellings" permitted. Although City Council did not place a hyphen after the word "one," it crafted the language as "one *or* two-family detached dwellings." Zoning Code, § 7–309.14(a). City Council could have simply omitted the word "or" to signify that only one two-family detached dwelling is permitted per lot in an RLB. If City Council had intended to place a restriction on the number of detached dwellings allowed per lot, the "or" in between "one" and "two-family" would be unnecessary. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Thus, the Board should have resolved the ambiguity in section 7–309.14(a)'s language in favor of Applicant, permitting multiple dwellings per lot instead of imposing its own desired interpretation. *Kissell; Church of the Saviour.* We note that there are safeguards in the Zoning Code, such as setback and square-footage requirements, that address the Board's overcrowding concern. Zoning Code, § 7–309.16(c).

■ While the Board has discretion in interpreting its zoning regulations, it must adhere to the words of the Zoning Code. In accordance with the MPC and the Zoning Code, the Board has express standards and criteria that it must follow when determining whether to grant a variance or special exception application. Instead of following those standards, the Board improperly read into the Zoning Code a rule that there may only be one dwelling per lot. *Greth.* Neither Applicant in its brief nor the Board in its decision cited any provision of the Zoning Code to support this interpretation.[10] Although not at issue presently, the language of sections 7–

309.1–7–309.3 of the Zoning Code cited by the Board does not provide any support for its interpretation of sections 7–309.14 and 7–309.16. Section 7–309.1(1) provides that the following buildings, structures, and uses are permitted in the Residential Single Family Zone:

(1) single-family detached dwellings with floor space of not less than four hundred (400) square feet or more; [ ]

(2) churches and religious buildings; public, private or parochial schools offering courses in general education; accredited colleges; libraries; community assembly halls; and governmental buildings and public utility buildings or structures, provided the Zoning Hearing Board, upon appeal, finds that their location is necessary to the service of the zone and approves the location and design; [ ]

(3) publicly owned or publicly operated parks, play spaces and other recreational facilities with customary incidental buildings, structures and uses; and

(4) home occupations as defined and regulated in Chapter 7–323.

Zoning Code, § 7–309.1.

Section 7–309.2 provides that only the following buildings, structures, and uses are permitted in the Residential Semi-Detached Zone:

(1) all buildings, structures and uses permitted in an RSF Zone;

(2) two-family detached dwellings, having a separate outdoor or vestibule entrance on the ground floor, front and rear, for each family and having

---

**10.** Moreover, when asked at oral argument for support for this interpretation, the Board could not cite any provision in the Zoning Code.

a floor area of four hundred (400) square feet or more for each family;

(3) pairs of single-family semi-detached dwellings where the attachment extends not over seventy-two (72) feet deep, including porches, and having a floor area of four hundred (400) square feet or more for each family;

(4) three- or four-family manor-group dwellings;

(5) home occupations as defined and regulated in this Code.

Zoning Code, § 7–309.2. Further, section 7–309.3 provides that the following buildings, structures, and uses are permitted in the Residence Zone No. 3:

(1) all buildings, structures and uses permitted in an RSD Zone;

(2) two- or three-family semi-detached dwellings, provided that each family unit has floor space of four hundred (400) square feet or more and a separate outdoor or vestibule entrance, front and rear, except that in case of conversion or remodeling of existing buildings, the separate entrances may be from a common hall or stairhall [sic];

(3) detached multiple dwellings;

(4) hospitals or other similar institutions for human beings for other than contagious or mental diseases if in detached buildings twenty (20) feet or more distant from any line of another lot;

(5) detached or semi-detached buildings used for studios, offices or laboratories for doctors, dentists, or other professionals; [ ]

(6) professional offices, studies, studios, or galleries when contained partially or wholly within a new building or

an expansion or extension of an existing building. In no case, however, shall the floor area ratio devoted to such use exceed two to one (2:1);

(7) commercial and vocational schools when contained partially or wholly within a new building or an expansion or extension of an existing building.

Zoning Code, § 7–309.3.

Similar to the language of section 7–309.14(a), none of these sections provide restrictions on the number of dwellings allowed to be constructed per lot. These three sections permit family residences in their respective zones as follows: "single-family detached dwellings;" "two-family detached dwellings;" "pairs of single-family semi-detached dwellings;" "three- or four-family manor group dwellings;" "two- or three-family semi-detached dwellings;" and "detached multiple dwellings." Zoning Code, §§ 7–309.1–7–309.3. Also similar to sections 7–309.14 and 7–309.16, these sections contain dimensional requirements. There is nothing in any section of the Zoning Code that provides for, as the Board stated, "the *idea* of single-family-per-lot-neighborhoods, or two-family-per-lot-neighborhoods."[11] (Board's op. at 4) (emphasis added). However, the Board aptly stated that these types of neighborhoods are an "idea," as this rule is one created by the Board and not City Council. The Board may not impose its own concept of how the Zoning Code should be written, but it must apply the terms of the Zoning Code as written by City Council. *Greth.*

■ If City Council desired a restriction on the number of dwellings per lot beyond that provided by the dimensional requirements, it simply could have signi-

---

11. At oral argument, the Board's attorney admitted that there was not a specific provision in the Zoning Code that provided for these types of neighborhoods in the City of Harrisburg.

fied that only one dwelling could be built per lot. It chose not to do so, and, in interpreting zoning ordinances, we are to construe words and phrases according to their common meanings and are to give effect, if possible, to all provisions of a zoning ordinance. 1 Pa.C.S. § 1921(a); *Galzerno.* Therefore, the Board abused its discretion in denying Applicant's variance and special exception application on the grounds that Applicant's proposal to build two dwellings on one lot is not in accordance with the Zoning Code.

### Whether Applicant's Side–Yard Setback Special Exception Request Should be Deemed Approved

Applicant also argues that its application for a special exception to the Zoning Code's setback requirements should be deemed approved because the Board failed to issue a determination regarding that issue within 45 days as required by section 908(9) of the MPC, 53 P.S. § 10908(9) ("The board ... shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board."). However, the Board issued a determination within 10 days from the hearing, denying Applicant's application on the basis that no more than one unit is permitted per lot in an RLB. (R.R. at 98.)

▆▆▆ The Board interpreted Applicant's need for zoning relief as follows:

Applicant requests a variance and special exceptions to erect four rental units on a property that is zoned for a maximum of two units. As we read the application, the zoning relief that Applicant needs to proceed with this project includes (1) a variance for use, for a four-dwelling unit rather than the permitted two units; (2) a variance to permit accessory parking on a non-abutting lot ( [Zoning Code,] § 7–319.10); (3) special exceptions for partial side and rear-yard setback reductions; (4) special exception or variance from the requirement that 'two-family dwellings require separate outdoor or vestibule entrance on the ground floor, front and rear, for each family' ( [Zoning Code,] § 7–309.16(a)(1) incorporating [Zoning Code,] § 7–309.14(a)(1)).

(R.R. at 96–97.) The Board concluded that Applicant never addressed the need for a special exception regarding height in its application. The Board also concluded that Applicant failed to show the necessary hardship for a variance to build two, two-unit dwellings on the Property. Because the Board concluded that Applicant "has failed to prove entitlement to the use variance," (R.R. at 98), the Board stated that it did not need to address the parking, dimensional, or design issues in Applicant's variance and special exception application. (R.R. at 98.) When special exceptions are ancillary to the need for a variance and the application is denied on the basis of the variance, the question of whether an applicant should be granted the special exceptions is moot. *See Pennsy Supply, Inc. v. Zoning Hearing Board of Dorrance Township,* 987 A.2d 1243, 1254–55 (Pa.Cmwlth. 2009) (holding that where the requested variances are ancillary to the need for a special exception, there is no need to address the requested variances when the application is denied on the basis of the special exception, and, thus, the question of whether the applicant should be granted the variance became moot).

▆▆▆ Here, the Board issued its decision within the permitted timeframe under section 908(9) of the MPC, only 10 days after the hearing. The Board denied the application because, under its improper interpretation, Applicant "failed to prove entitlement to the use variance." (R.R. at

98.) There was no need for the Board to reach a decision on the remaining issues when it already determined that it would deny Applicant's application. *Pennsy Supply.* Therefore, because the Board provided a decision within the prescribed 45–day window, Applicant is not entitled to a deemed approval merely because the Board denied its application on a different basis than the setback requirements.

 However, the Board did not make any findings or any determination regarding the remaining setback, parking, and design issues in Applicant's variance and special exception application. The Board did not find that Applicant failed to produce any evidence in support of its variance and special exception application concerning the setback, parking, and design issues but merely that it did not need to address these issues in its opinion. Where the record is not adequate for appellate review, the case should be remanded to the Board to develop the record and make the necessary findings. *Bene v. Zoning Hearing Board of Windsor Township,* 121 Pa.Cmwlth. 380, 550 A.2d 876, 879 (1988) (affirming the common pleas court's remand to the Board to develop an adequate record because there was "no determination on the merits of the accessory use issue and insufficient evidence in the record for meaningful appellate review"); *Graduate Hospital v. Philadelphia Zoning Board of Adjustment,* 82 Pa.Cmwlth. 374, 474 A.2d 1228, 1231 (1984) (vacating the common pleas court's order and remand-ing the case to develop an adequate record on a timeliness issue where the Board's findings were not sufficient for appellate review.) Because the Board did not make any findings on the remaining issues and because the record is not adequate for our review, we must remand this matter for findings on the setback, parking, and design issues.

Accordingly, we reverse the trial court's order denying Applicant's application on the basis that no more than one dwelling is permitted per lot in an RLB, and we remand this matter to the trial court with directions to remand to the Board for findings regarding Applicant's application for a variance and a special exception for setback, parking, and design issues.

### ORDER

AND NOW, this 30th day of January, 2015, the March 13, 2014 order of the Dauphin County Court of Common Pleas (trial court) is reversed, and we remand this matter to the trial court with instructions to remand to the City of Harrisburg Zoning Hearing Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.